### In re MASTER KEY ANTITRUST LITIGATION.

### M.D.L. Docket No. 45.

United States District Court,
D. Connecticut.

May 27, 1975.

Lee A. Freeman, Jr., Freeman, Rothe, Freeman & Salzman, Chicago, Ill., liason counsel for plaintiffs.

Evelle J. Younger, Atty. Gen., William S. Abbey, Deputy Atty. Gen. of California, Los Angeles, Cal., for plaintiff State of California.

John W. Barnett, Wiggin & Dana, New Haven, Conn., Walter A. Bates, Arter & Hadden, Cleveland, Ohio, co-liason counsel for defendants Eaton Corp., Ilco Corp. and Sargent & Co.

## RULING ON PENDING MOTIONS

BLUMENFELD, District Judge.

This litigation, consolidated under the multidistrict procedures for pretrial proceedings in this district, involves antitrust claims by purchasers of master key systems against four defendant manufacturers. The cases have been summa-rized before, *see In re Master Key Antitrust Litigation,* M.D.L. No. 45 (D.Conn. Aug. 22, 1973), reported at 1973–2 Trade Cases ¶ 74,680, and familiarity with them will be presumed here.[1] Two major motions are presently awaiting decision. The defendants have moved to set aside the provisional class certification long ago entered in two of these cases, *see City of Philadelphia v. Emhart Corp.,* 50 F.R.D. 232 (E.D.Pa.1970), and to have class certification denied in those cases in which the issue has not been ruled upon. The plaintiffs have moved to transfer those cases not presently in this district for all purposes to this court and to consolidate all of the cases for trial, *see* 28 U.S.C. § 1404(a) (1970); Fed.R. Civ.P. 42(a). Further, the plaintiffs seek to separate the trial into two stages—the first to prove liability; the second to show damages—, *see* Fed.R.Civ.P. 42(b).

### I. *Class Certification*

The rules for certification of a class action of this sort are by now well known. The factors analyzed below track the requirements contained in Fed. R.Civ.P. 23(a), (b)(3).[2]

▮ There is no question but that the classes here are so numerous as to render joinder of all the members impractical. Fed.R.Civ.P. 23(a)(1). But the defendants argue that almost none of the other class action requirements are satisfied. Fed.R.Civ.P. 23(a)(2) requires that there be questions of law or fact common to the class; Fed.R.Civ.P. 23(b)(3) requires that these common questions predominate over those not

1. It may be useful, however, to set out for the record a clarification of the plaintiffs' claims which has now occurred. First, they claim a conspiracy among the four defendants to fix prices. Second, they claim that a horizontal conspiracy existed among the defendants to eliminate inter- and intra-brand competition among their dealers, thus keeping prices above competitive levels. This conspiracy was allegedly implemented by a series of illegal vertical restrictions. The damage claims arise from the horizontal, not the vertical, conduct. Thus the plaintiffs plan to prove illegal vertical restrictions upon the dealers only to demonstrate by implication the existence of a horizontal conspiracy among the defendants to reduce competition (and thus maintain prices above the competitive level) at the dealer level. The plaintiffs assert that they therefore need not and will not introduce evidence as to all of the illegal vertical restrictions they claim to have discovered. *See* Transcript of Hearing, Jan. 27, 1975, at 10–23.

2. Re the inapplicability of Fed.R.Civ.P. 23(b)(2), *see; e. g., Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D.Pa.1975).

common to the class. In these cases the common questions are certainly central at least on the issue of liability. The plaintiffs' claims all go to group conduct by the defendants. It is true, as the defendants urge, that there may be local variations in marketing practices and the like. It is also true that in order for all the plaintiffs to recover it must be shown that the effects of the defendants' alleged anti-competitive behavior extended to all the areas in which plaintiffs made master key purchases. But these facts do not change the central and common element of these cases—the question whether the defendants acted in concert to decrease competition among them. If this element is shown, differences in the way the plan was manifested around the country are unimportant, except perhaps as they may affect the amounts of recovery different plaintiffs may obtain. Nor does this last qualification militate against class certification; in few class actions is there a simple per capita measure of recovery. Here the differences may be due to different conduct of buyers and sellers (as opposed, perhaps, to differences only among buy-

ers in some other class actions). But the differences in damage recoveries may be handled by splitting the trial into liability and damage components, as discussed *infra*. And the proper inquiry in certifying a class for purposes of trying liability is simply whether common issues predominate as to the liability issue. *See Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D.Pa.1975) and cases cited therein. As to this inquiry, I hold that the common issues predominate.[3]

The last requirement of Fed.R. Civ.P. 23(a) is that the representative parties adequately protect the interests of the class.[4] The defendants do not challenge the allegations of the various states seeking class certification that they are proper representatives of their political subdivisions and agencies,[5] with the exception that they reraise the "pass-on" defense. I have earlier explicated and rejected this defense as applied to most of the issues here presented,[6] *see In re Master Key Antitrust Litigation,* M.D.L. No. 45 (D.Conn. Aug. 22, 1973), and I adhere to that ruling here.

---

3. The defendants argue that there is no liability without injury, and that a crucial element of the plaintiffs' case will, therefore, be proving damage. The argument continues: as the complexities of showing damage to each plaintiff are involved at the liability stage, it may be seen that common issues do not predominate even as to this portion of the case.

I believe this classic defense argument, cf. "Eisen IV, Class Actions One Year Later," 711 ATRR, Apr. 29, 1975, at B–1, B–4, to be a red herring, notwithstanding its acceptance by some courts. *See, e. g., In re Transit Co. Tire Antitrust Litigation,* 67 F.R.D. 59 (W.D.Mo. 1975). If the plaintiffs introduce proof (or if it may be stipulated) at the liability stage that they bought master key systems and that the defendants engaged in a pervasive nationwide course of action that had the effect of stabilizing prices at supracompetitive levels, the jury may conclude that the defendants' conduct caused injury to each plaintiff. The amount of that injury may be computed at a separate trial on the damage issues. *Cf. Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 450 (E.D.Pa.1975). From the excerpts of transcripts provided me by the plaintiffs, it appears that Judge McGarr has adopted a sim-

ilar position in the *Automobile Fleet Discount Cases,* M.D.L. No. 65 (N.D.Ill.), as did Judge Sirica in the *Ampicillin Antitrust Litigation,* 55 F.R.D. 269, 275–76 (D.D.C.1972).

4. Fed.R.Civ.P. 23(a)(3) requires that the claims of the representative parties be "typical" of the class. However, this requirement adds nothing to the other requirements of rule 23(a). *See Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D.Pa.1975); 3B J. Moore, *Federal Practice* ¶ 23.06–2 (Rel. No. 8) and cases cited therein. Thus such facts as that some of the representative plaintiffs are located in eastern cities while members of the class are located in the plains states are irrelevant if they do not have significance under one of the other clauses of rule 23.

5. *See, e. g., Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969).

6. To the extent that the plaintiffs' contractors, who built the structures incorporating the master key systems, can be shown to have absorbed any of the amount by which the defendants' prices exceeded the price level that would have existed absent illegal conduct, the plaintiffs' damages may be reduced.

It is the two national class actions to which the defendants address most of their objections.[7] They argue that the City of Philadelphia, which seeks to represent all otherwise-unrepresented public entities who are ultimate purchasers of master key systems, bought a lower percentage of master key extensions than a number of other public entities. They also object to Philadelphia, a populous eastern city, representing sparsely settled plains states, *inter alia*. I do not find these distinctions compelling, at least to the extent that they are addressed to the liability issues in that case. Philadelphia, having purchased some master key extensions, surely has standing to press a claim as to overcharges on such products. And the lower percentage creates no conflict of interest between Philadelphia and the class it seeks to represent. All share an interest in proving that the defendants conspired to stabilize prices at a supra-competitive level. Similarly, the geographic differences are not compelling, for what is at issue is the existence of a national conspiracy, as effective in Wyoming as in Philadelphia.[8]

The defendants' objections to Amherst Leasing as the representative party for a national class of private builder-owners are also unconvincing. The fact, offered as an objection by the defendants, that Amherst Leasing bought mostly locksets for high-rise buildings seems totally insignificant; there is no indication that the alleged conspiracy operated differently with respect to master key systems for high-rise buildings than with respect to systems for other sorts of buildings. Nor are the particular buying practices of Amherst Leasing relevant to the existence of this conspiracy; if they are relevant at all, it is only as to the damages recoverable.

The defendants also object to Amherst Leasing's representation of this large class because of speculation that it will not be willing to bear the cost of the notice to the class required by *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In an earlier ruling I held that Samuel Lefrak, the head of Amherst Leasing's parent organization, could be deposed as to its ability and willingness to absorb the costs of representation in this suit, *see Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121 (D.Conn.1974), and that deposition has now taken place. It may be that the defendants will be able to show that Lefrak is unwilling for Amherst Leasing to bear such a burden; they have requested leave to file a supplementary brief on this issue once they have the transcript of Lefrak's deposition. Absent that event, however, I am willing to notice that this plaintiff is a large company that is capable of representing the class if it wishes to, and that it has done so capably until now. Therefore I reject the defendants' objections, giving them leave to renew the class certification issue as to Amherst Leasing if Mr. Lefrak's deposition provides grounds to do so.

Rule 23(b)(3) requires that for a case to be maintained as a class action the court must find that litigation in any other posture would not be superior. The issue most relevant to superiority of the class actions here is manageability;[9]

---

7. The purported class action brought by Bermar Construction Corp. has been conditionally dismissed by order of the court and will not be considered further.

8. The city will, of course, be required to provide notice of this action to all reasonably ascertainable members of the class. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). If any of those noticed have any reservations about the adequacy of representation by the City of Philadelphia, they need not remain part of the class.

9. Rule 23(b)(3) makes several matters pertinent to a finding of superiority which are not really in issue here: the interest of members of the class in individually controlling the litigation and the extent and nature of other suits concerning this subject matter already commenced. As to the advantage of concentrating

the defendants say that this litigation is simply not manageable. Their argument is largely based upon the position, rejected in note 3 *supra,* that a particularized showing of some damage to each plaintiff is an integral part of the liability issue. I will not repeat the refutation of that position here. I see no insurmountable management problems with these cases, a conclusion supported by the smooth conduct of the extensive and complex pretrial proceedings to date. *Cf. Automobile Fleet Discount Cases,* M.D.L. No. 65 (N.D.Ill. Feb. 28, 1975). Nor do I find that any other method of proceeding in this litigation would be superior to maintenance of these class actions.

Thus I adhere to Judge Wood's earlier certification of these classes, denying the defendant's motion and granting the outstanding plaintiff motions for class certification. An important proviso to this ruling, however, is that it is based almost entirely on considerations relevant to the liability, not the damage, issues in these cases. Decertification or certification of different classes remains possible for purposes of whatever damage determination may be called for at a later date.

## II. *Consolidation of Cases and Separation of Issues*

■ Rule 42(a) provides that this court may consolidate all cases before it involving a common question of fact or law. In order to get all these cases before this court for all purposes, the plaintiffs have moved to have those cases still on the dockets of other districts transferred here.[10] As the multidistrict transferee court, I have the authority to rule on such a motion. *See, e.*

*g., Pfizer, Inc. v. Lord,* 447 F.2d 122 (2d Cir. 1971); Rule 13(b), Rules of Procedure of the Judicial Panel on Multidistrict Litigation. Under 28 U.S.C. § 1404(a) (1970) these cases may be transferred here if they might have been brought in this district originally. As all of the defendants have admitted being present in Connecticut, this requirement is satisfied. *See* 15 U.S.C. § 15 (1970). The other prerequisite to transfer is that it be in the interest of justice and for the convenience of parties and witnesses. In one of the suits already in this district for all purposes pursuant to a § 1404(a) transfer, it was the defendants who sought the transfer with just such considerations in mind. Judge Napoli ruled that justice would be served by a transfer, *Connecticut v. Eaton, Towne & Yale, Inc.,* No. 70 C 591 (N.D.Ill. Nov. 10, 1970). I agree. Therefore all cases not presently in this district for all purposes, except those brought by the State of Florida and the City of New York, are ordered transferred here. Because the cases involve common issues of law and fact, they are also ordered to be consolidated under Fed.R.Civ.P. 42(a).

■ The remaining issue is posed by the plaintiffs' request, pursuant to Fed. R.Civ.P. 42(b), to conduct separate trials of the liability and damage stages of these consolidated cases. This is a common tool for dealing with complex litigation such as this. *See, e. g.,* PLI, Class Actions 1975, at 53–55 (Litigation Course Handbook Series No. 71) and cases cited therein. And, as I have indicated above, the idea seems to be a good one for these cases as well. The proof that will be introduced as to the liability issues is in large part common to all the plaintiffs. The proof as to damages is likely

---

the litigation in this forum, I find Judge Napoli's opinion on the issue of whether to transfer several of these cases to this district persuasive. *See Connecticut v. Eaton, Towne & Yale, Inc.,* No. 70 C 591 (N.D.Ill. Nov. 10, 1970). He found compelling advantages in keeping the several cases with which he was dealing together, transferring them all here. I

agree that this litigation should be disposed of as a whole rather than in bits and pieces.

10. The State of Florida and the City of New York have not joined in this motion. If they choose not to present such motions, their cases must be remanded to the districts from whence they came at the conclusion of pretrial proceedings.

to be much more individualized. Indeed, the damage component of this litigation, if we must reach it, may be easily resolved only by reference to a special master or through a long series of separate minitrials, one for each plaintiff. Thus, it seems eminently sensible to postpone both further discovery and trial of the damage claims until it is ascertained that the defendants will be liable for some amount.[11]

The defendants' major objection to this course of action rests on their argument that a particularized showing of damage to each plaintiff must be an element of the liability trial. If this position were accepted, separate trials as requested by the plaintiffs would simply involve duplicative introduction of damage evidence in each and would accomplish nothing. However, I have not accepted the premise of this argument. *See* note 3 *supra*. Therefore I remain convinced that separate trials will be more efficient than a single trial of both liability and damage issues.

 The defendants' other objection to splitting the liability trial from the damage determination is that this procedure will preclude the use of the same jury for both stages, in violation of the seventh amendment to the Constitution. *Cf. United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir.), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961). The constitutional question turns on whether "the issue to be [tried to a second jury] is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (1931). Here the distinctness of the damage issue seems clear. At the liability stage it will be determined whether the defendants' conduct included violations of the antitrust laws and whether it affected prices. The proof of the alleged conspiracy and of liability to the plaintiffs will be possible without detailed reference to damages, as set out in note 3 *supra*. Similarly, proof of damages suffered will be possible without detailed reference to liability issues: the issues at this stage will be what the plaintiffs paid for their master key systems and what they would have paid if the defendants had refrained from specific conduct earlier found to be illegal. Thus I find the defendants' constitutional objections unpersuasive and order that separate trials be held on the issues of liability and damages. *Cf. Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir. 1974); *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *LoCicero v. Humble Oil & Refining Co.*, 52 F.R.D. 28 (E.D.La.1971). It is

SO ORDERED.

---

11. It also seems sensible to postpone determining the exact procedure that will be followed at the damage stage until it is certain that there will be such a stage and until enough discovery as to damages has been had that the parties are better able to inform the court of the best procedure to follow.