The STATE OF ALABAMA et
al., Plaintiffs,

v.

BLUE BIRD BODY COMPANY, INC.,
et al., Defendants.

Civ. A. No. 75–23–N.

United States District Court,
M. D. Alabama, N. D.

July 15, 1976.

William J. Baxley, Atty. Gen., George L. Beck, Deputy Atty. Gen., Charles M. Crook, Sp. Asst. Atty. Gen., Montgomery, Ala., E. C. Hornsby, Sp. Asst. Atty. Gen., Tallassee, Ala., Robert S. Vance and James N. Brown, III, Trial Counsel, Vance, Thompson & Brown, Birmingham, Ala., Thomas W. Thagard, Jr., Trial Counsel, Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for plaintiffs.

Sam R. Shannon, Jr., Birmingham, Ala., for Duncan Manufacturing & Equipment Co., Inc. and Carpenter Bus Sales of Alabama.

Broox G. Garrett, Brooks, Garrett & Thompson, Brewton, Ala., for Everett Equipment Co., Inc.

Steiner, Crum & Baker, Montgomery, Ala., Stephen W. Terry, Jr., Baker & Daniels, Indianapolis, Ind., for Thomas Built Buses, Inc.

Robert A. Huffaker and Wm. B. Moore, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., Bruce L. Smith, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for Sheller-Globe Corp. and Superior Coach Corp.

Joseph C. Espy, III, Montgomery, Ala., Harry T. Ice and James E. Hawes, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for Carpenter Body Works, Inc.

William I. Hill, II, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., Trammell E. Vickery and Kent E. Mast, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Wayne Corp.

James R. Shaw, Bessemer, Huie, Fernambucq, Stewart & Smith, Birmingham, Ala., for Waits Sales & Equipment Co., Inc.

Richard H. Gill, Hobbs, Copeland, Franco & Screws, Montgomery, Ala., for Phillips Supply Co.

Joel F. Dubina and D. Coleman Yarbrough, Jones, Murray, Stewart & Yarbrough, Montgomery, Ala., Robert E. Jensen, Williams & Jensen, Washington, D. C., for Ward School Bus Mfg., Inc.

E. Smythe Gambrell, Edward W. Killorin, Thomas W. Rhodes, David M. Brown, Gambrell, Russell, Killorin, Wade & Forbes, Atlanta, Ga., John R. Matthews, Jr., Ball, Ball, Matthews & Lamar, Montgomery, Ala., for Blue Bird Body Co., Eddins Bus Sales, Inc. and Blue Bird Mid-South, Inc.

## ORDER AND MEMORANDUM OPINION

VARNER, District Judge.

There are now presented the Plaintiffs' motion for leave to amend their complaint herein and the question of certification of Plaintiff classes as requested in this cause, pursuant to Rule 23(c)(1). Although the requested classes differ slightly in the proposed amended complaint from the single class sought in the original complaint, the issue has been fully argued as to all proposed classes.

Recognizing the novelty of the preliminary questions,[1] the potential costs of litigating this case on the issues,[2] and the possibility of the futility of this litigation if this Court is in error as to preliminary matters—particularly as to the propriety of this Court's determining certain issues and transferring other issues for trial in the most convenient courts and as to the Rule 23(c)(1) certification of classes, this Court is cognizant of the potential value to all parties of a preliminary appeal of these issues.

### ALLOWANCE OF AMENDED COMPLAINT

Plaintiffs originally brought this action on behalf of a purported class composed of all State and local governmental entities within the United States outside of the State of Georgia (in which State prior litigation has already terminated in a consent judgment) which have purchased school buses from Defendant School Bus Manufacturers and Distributors. The original complaint charged that Defendants had violated 15 U.S.C. § 1, being a portion of the Sherman Antitrust Act, by entering into a conspiracy or combination in restraint of trade resulting in artificially high price levels for school bus bodies purchased by members of the Plaintiff class. In the course of lengthy pretrial proceedings, it became clear that the distributor defendants do business only on a regional or statewide basis. In response to this Court's suggestion that there might be an inequity in requiring such regional defendants to defend a nation-wide class action, plaintiffs have prepared a proposed amended complaint wherein charges against distributors and manufacturers jointly are segregated into a "First Claim" as to which certification is sought only for a statewide plaintiff class. In a "Second Claim" brought on behalf of a nation-wide class of the same dimensions as previously alleged, Plaintiffs charge only the manufacturer defendants with violation of both §§ 1 and 2 of the Sherman Act. The new allegations of § 2 violations charge Defendants with "conspiracy to monopolize, to attempt to monopolize, and/or an unlawful conspiracy in unreasonable restraint of * * * trade and commerce."

The question of the propriety of allowing the proposed amendment has now been ful-

---

1. This cause contemplates a nation-wide conspiracy of school bus manufacturers and distributors to fix prices on school buses sold to every school board in the United States. This Court contemplates that one court may determine the existence of such a nation-wide conspiracy but that the amount of damages to each party Plaintiff may best be determined on a local basis. While numerous difficulties have been anticipated, no better remedy for the alleged wrong has been suggested.

2. Considering estimated costs of discovery and counsel for determining damage in every county in the nation, costs of a futile trial would be astronomical.

ly briefed and argued, pursuant to the Court's order of May 24, 1976. Defendants strenuously contend that the allowance of the amendment more than one year after filing of the original complaint will result in substantial prejudice to them, particularly insofar as it introduces a new cause of action based on a different provision of the antitrust laws.

The Court is unable to agree with Defendants' arguments. While conspiracies falling under §§ 1 and 2 of the Sherman Act are "reciprocally distinguishable from and independent of each other," *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), "monopoly under § 2 is a species of restraint of trade under § 1," *United States v. Socony-Vaccuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), and "the same kind of predatory practices may show violations of [both sections]." *Maryland & Virginia Milk Producers v. United States,* 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1946). It appears to this Court from a comparison of the details of the original complaint with the "Second Claim" of the proposed amended complaint that the factual basis for the two claims is conceived by the Plaintiffs as being substantially the same in both. Furthermore, and perhaps more importantly, the Court is unable to see that substantial prejudice will result to Defendants if the proposed amendment is allowed. Although it is true that this cause has been pending for well over a year, it is also true that it remains at a very preliminary stage. All proceedings heretofore conducted have been related to procedural matters, and the major part of the efforts of the parties and of the Court up until now have been directed toward the issues of venue and class certification. No discovery on the merits has been allowed to proceed, and no issues of law on the merits have been addressed. In this situation, Defendants' claim that they are prejudiced by the addition of a new claim which raises new legal issues and factual questions must yield to the mandate of Rule 15(a), Federal Rules of Civil Procedure, that "leave [to amend] shall be freely given when justice so requires." Therefore, it is

ORDERED by this Court that Plaintiffs' motion for leave to amend complaint be, and the same is hereby, granted.

██ Defendants have also pointed out that 15 U.S.C. § 2 does not create a cause of action for conspiracy to attempt to monopolize. The Court agrees with this contention. *Southern Concrete Co. v. United States Steel,* 394 F.Supp. 362 (N.D.Ga.1975). Although, as Defendants have pointed out, the authorities are in conflict as to whether the better practice is to deny leave to amend so as to prevent adding a legally insufficient claim or to allow amendment with subsequent challenge by motion to dismiss, the Court feels that the just and expeditious procedure in the case of this fully-argued point is to decide it on motion for leave to amend. Accordingly, it is

ORDERED by this Court that the words, "to attempt to monopolize", be, and they are hereby, stricken from ¶ 40 of the amended complaint.

## PROPRIETY OF PROPOSED PLAINTIFF CLASSES

The Court finds that, if this action is to be maintained on behalf of the Plaintiff classes alleged in the amended complaint, it must meet the requirements of Rule 23(b)(3), Federal Rules of Civil Procedure, as well as of Rule 23(a). It is to these two requirements that the Court now turns.

The first prerequisite to a class action enumerated in Rule 23(a) is that the proposed class must be so numerous that joinder of all members is impracticable. It is not seriously disputed that both the statewide and the nation-wide classes proposed herein meet this requirement. It is believed that the statewide class contains about 126 members and the nation-wide class in excess of 16,000. It is also clear that, while questions not common to all may arise, there are common questions of law or fact herein as required by the second enumerated prerequisite. The most obvious of these questions is the very existence of a conspiracy among the Defendants.

■ Defendants' principal arguments concerning the requirements of Rule 23(a) are addressed to those of typicality of the claims of representative parties and fairness and adequacy of representation of the class by the named plaintiffs. Defendants contend that the allegations of the "Second Claim" of the amended complaint, which is the claim as to which a nation-wide Plaintiff class is sought, show that the interests of the class Plaintiffs would be in conflict one with another. Specifically, they refer to ¶ 42(c) of the amended complaint:

"(c) The price range fixed each year within the State of Alabama and within other States by defendants has consistently exceeded the prices at which buses manufactured by the manufacturer defendants have been sold to certain favored public agencies outside the State of Alabama."

This allegation is substantially like ¶ 31(c) of the amended complaint [pertaining to the first claim (statewide class)], which was included in the original complaint. Defendants claim that the inclusion of this allegation illustrates the fact that this is basically a State of Alabama lawsuit to which the national class allegations were added as an afterthought. They further say that ¶ 42(c) shows that some of the purported Plaintiffs have actually been *favored* by the alleged conspiracy and, thus, that a general class consisting of purchasers in all States would be inappropriate. This Court does not agree that any showing of conflict has been made. The fact that some school bus prices in Alabama may have been higher than some prices in other States does not necessarily or even reasonably create an inference that any purchasers of school buses have benefited from the alleged conspiracy. Plaintiffs have not alleged that school bus prices in other States were depressed below the free market level by the actions of Defendants. The Court does not consider it reasonable to suppose that Defendants are alleged to have entered into a conspiracy to raise prices in certain areas while artificially lowering them below free market level in other areas. It seems to this Court that all or substantially all class members have the same interest in recovering damages for any such conspiracy, if any, as may be found to have existed. Their interests will differ in degree, perhaps, but not in nature.

This Court has been assured by Plaintiffs' attorneys that they stand ready to advance costs for notices which may be required to all or certain class members.

In addition, it remains within the power of the Court to create subclasses or to restrict the classes if it appears to be advisable at a later stage. For the present, no conflict between the claims and interests of the named Plaintiffs and those of the proposed classes has been shown. This Court finds that the claims of representative Plaintiffs are typical of those of the proposed classes and that the representative Plaintiffs have the capacity and willingness fairly, adequately and effectively to prosecute this action in their behalf. The Court, thus, concludes that the requirements of Rule 23(a) are met in this matter.

■ Turning to the requirements of Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is the superior method for adjudication of this controversy. On the first of these questions, Defendants' principal argument is that individual proof of injury and damages will be necessary as to each class member. Acceptance of this argument would, in this Court's judgment, effectively preclude the use of class actions in antitrust cases. It is too widely recognized to require citation that antitrust price-fixing cases are particularly suitable for class action treatment, in spite of the fact that the fact of injury and the amount of damages may require individual proof by class members. See *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791 (10th Cir. 1970) and cases collected at Annotation: Propriety, under Rules 23(a) and 23(b) of Federal Rules of Civil Procedure, as amended in 1966, of Class Actions for Violation of Federal Antitrust Laws, 6 A.L.R.Fed. 19. Furthermore, the Court cannot share Defend-

ants' viewpoint that the fact of injury, as distinct from the amount of damages, will not be susceptible of generalized proof. See *National Auto Brokers v. General Motors,* 60 F.R.D. 476, 490 (S.D.N.Y.1973). It is the opinion of this Court that proof, that artificially high price levels prevailed in the national school bus market as a result of the conspiracy alleged herein, will constitute proof of the fact of injury to the class of purchasers of such buses. A recent district court opinion reaches a similar conclusion:

"If the plaintiffs introduce proof (or if it may be stipulated) at the liability stage that they bought master key systems and that the defendants engaged in a pervasive nationwide course of action that had the effect of stabilizing prices at supracompetitive levels, the jury may conclude that the defendants' conduct caused injury to each plaintiff." *In re Master Key Antitrust Litigation,* 70 F.R.D. 23, 26 note 3 (D.Conn.1976)

In the opinion of this Court, none of Defendants' other arguments on the issue of predominance of common questions is of sufficient weight to counterbalance the fact that the central and predominant issue herein is whether or not Defendants have acted to monopolize or restrain trade in school buses. The conclusion of the court in the *Master Key* litigation is equally appropriate in this action:

"The plaintiffs' claims all go to group conduct by the defendants. It is true, as the defendants urge, that there may be local variations in marketing practices and the like. It is also true that in order for all the plaintiffs to recover it must be shown that the effects of the defendants' alleged anti-competitive behavior extended to all the areas in which plaintiffs made master key purchases. But these facts do not change the central and common element of these cases—the question whether the defendants acted in concert to decrease competition among them. If this element is shown, differences in the way the plan was manifested around the country are unimportant, except perhaps as they may affect the amounts of recov-

ery different plaintiffs may obtain. Nor does this last qualification militate against class certification; in few class actions is there a simple per capita measure of recovery. Here the differences may be due to different conduct of buyers and sellers (as opposed, perhaps, to differences only among buyers in some other class actions). But the differences in damage recoveries may be handled by splitting the trial into liability and damage components, as discussed infra. And the proper inquiry in certifying a class for purposes of trying liability is simply whether common issues predominate as to the liability issue. See *Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D.Pa.1975) and cases cited therein. As to this inquiry, I hold that the common issues predominate." (footnote omitted) 70 F.R.D., at p. 26.

■ Perhaps the more serious contention of Defendants is that a class action is not a superior method of adjudicating this controversy. The Court has no difficulty in concluding that the interest of class members in controlling the prosecution or defense of separate actions is subordinate in this case to the values that will be produced by class action treatment. No problem of conflict with other litigation in progress appears, since none has been brought to the attention other than the long-concluded Georgia case. It is the opinion of this Court that it is highly desirable in the interests of judicial economy and, on a long-term basis, the interests of fairness to Plaintiffs and Defendants, to concentrate litigation insofar as feasible in one district even if certain issues must be tried elsewhere.

■ It is the question of manageability which most concerns the Court, and, more particularly, the question whether the certification of classes herein will cause this Court to be swamped with, in the case of the nation-wide class, hundreds of individual proceedings to determine the amount of damages suffered by individual class members. The Court is aware of authority that, once liability is established, it is sometimes

permissible to employ mechanical means or formulas to compute damages in an antitrust case of this type, and it recognizes that Plaintiffs' suggestion that a special master be appointed for this purpose may be appropriate even in a jury case. *Union Carbide v. Nisley,* 300 F.2d 561, 569 (10th Cir. 1962). However, it seems equally probable to the Court that, in view of the variations in purchasing methods and other incidents of sale presented by Defendants[3], it may indeed be necessary to treat all or many damage claims individually. In the face of this possibility, it would be irresponsible for the Court to certify the classes herein, and especially the nation-wide class, without first satisfying itself that there exists a mechanism for avoiding such a paralyzing development. Upon consideration, the Court has proposed that it can, without going beyond its statutory powers and without violating the constitutional and statutory rights of Defendants, bifurcate the trial of this matter, and, after a jury determination, if any, of the issue of liability of nation-wide Defendants in this Court, sever the cases of class members or groups of members separated geographically and transfer the severed cases to other district courts for trial of all remaining issues, which will be primarily or exclusively damage issues.

Defendants have raised several serious questions about the permissibility and practicality of this procedure. The Court will first address itself to the statutory basis for such transfers as a matter of judicial power and then will discuss the constitutionality and propriety of such severance and bifurcation in this particular action.

It is indisputable that a district court has power to order separate trials not only as to claims but also as to issues. Rule 42(b), Federal Rules of Civil Procedure.[4] The United States Court of Appeals for the Fifth Circuit has approved the separation for trial of issues of liability and of damages in certain cases. *Swofford v. B & W,* 336 F.2d 406 (5th Cir. 1964). The Northern District of Illinois provides by local rule such a split shall be performed in personal injury actions in that court, a rule which has been sustained by the higher courts. *Hosie v. Chicago & Northwestern R. Co.,* 282 F.2d 639 (7th Cir. 1960), cert. den. 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. The Defendants, however, have maintained that the Court has no power under 28 U.S.C. § 1404(a)[5] to transfer portions of a case to other districts, citing an opinion of the Judicial Panel on Multidistrict Litigation:

> " * * * several separate claims for relief in a single civil action are severable in the interests of justice. A single claim for relief, however, is separable by issues for trial under Rule 42 only if the entire action and all issues therein remain under control of one court. * * * The reason is that, in federal civil procedure, the claim for relief is the irreducible legal unit for purposes of venue and jurisdiction by a single court at a particular time. This unitary concept of the claim for relief permits transfer of the claim for relief from one district court to another as in [the] case of a transfer under Sections 1404(a) or 1407. But in no such separation and transfer is contemporaneous dual control by two or more district courts of a single claim for relief (or separate issues thereof) permissible in the federal system." *In re Plumbing Fixtures,* 298 F.Supp. 484, 495 (JPML 1968).

The procedure envisioned by the Court, however, hopefully would involve no violence to the principle enunciated by the Judicial Panel for the reason that, under

---

**3.** The harassment value of a suit in Alabama to determine damages incurred in Oregon between Oregon residents is appalling.

**4.** "The court * * * may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, * * *."

**5.** "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

this procedure, there would be no "contemporaneous dual control * * * of a single claim for relief." After determination of the liability issue herein, the Court may sever the cases of individual class members and transfer them to other districts for determination of remaining issues. At that point, there will be multiple claims for relief, and no single claim will be under the control of more than one court. The procedure of severance and transfer was effectively used by Judge Johnson of this Court in the statewide school desegregation case. *Lee v. Macon County Board of Education*, CA # 604–E (M.D.Ala., Order of March 31, 1970). His procedure was specifically approved and recommended by the United States Court of Appeals for the Fifth Circuit in *United States v. State of Georgia*, 466 F.2d 197, 200 (5th Cir. 1972). *Accord Wyndham Associates v. Bintliff*, 398 F.2d 614 (2nd Cir. 1968). Since a plaintiff's claim may be severed equally with a defendant's, *Eastside Church of Christ v. National Plan*, 391 F.2d 357 (5th Cir. 1968), cert. den. 393 U.S. 913, 89 S.Ct. 234, 21 L.Ed.2d 198, this Court is of the opinion that it may proceed in this manner. Defendants' argument that *State of Georgia* and *Macon County* were both equity cases is basically a part of their argument that their right to a jury trial will be prejudiced by such bifurcation and transfer, considered below.

Turning to the constitutional objections to the procedure of bifurcation, severance and transfer, the Court finds that the only serious question raised in this area is Defendants' concern for their right of jury trial. Defendants point out that the *fact of injury* is an essential element of the cause of action. *Shumate & Co. v. National Association of Security Dealers*, 509 F.2d 147 (5th Cir. 1975). From this fact, they argue

that, to separate this issue, would be an improper splitting of the cause of action. As indicated above, however, this Court takes the view that generalized proof of anticompetitive effect would supply the required element (fact of injury) of the cause of action. Therefore, it is only the damage element of these claims that may be transferred after severance.[6]

In a few cases, separate trials have been ordered in antitrust cases on the issue of damages as distinguished from liability. See Annotation: Antitrust Actions—Separate Trials, 12 A.L.R.Fed. 831, especially § 6 thereof. Apparently courts have not been troubled by the fact that injury is an element of the cause of action. The fact that a few members of the class may ultimately fail to show any real pecuniary injury should not defeat the substantial interests served by a class action. It is frequently true, for instance, that in 10b–5 securities fraud cases, where reliance upon alleged misrepresentations is an essential element of the cause of action, some purchasers of stock may have actually benefited from the alleged wrongdoing. Yet it is common in such cases to separate the issue of reliance for later trial. *Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968), cert. den. 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Crasto v. Kaskel's Estate*, 63 F.R.D. 18 (S.D. N.Y.1974).

Defendants argue, however, that their right to a jury trial would be violated by the use of separate juries to determine issues of liability and damages.[7] They cite the pronouncement of the Supreme Court in *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959):

"Since the issue of violation of the antitrust laws often turns on the reasonableness of a restraint on trade in light of all

---

**6.** In *Shumate*, supra, the Fifth Circuit Court of Appeals upheld the District Court's refusal to certify an antitrust class action for the reason that proof of injury to each individual would be the "controlling question as to liability" and, thus, that the action would be unmanageable. The language used by the Court very definitely suggests that this decision was within the *discretion* of the district court. 509 F.2d at 155.

**7.** "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

the facts, see, e. g., *Standard Oil [Co. of New Jersey] v. United States,* 221 U.S. 1, 60 [31 S.Ct. 502, 515, 55 L.Ed. 619], it is particularly undesirable to have some of the relevant considerations tried by one factfinder and some by another." 359 U.S. at 508 note 10, 79 S.Ct. at 955. In this case, however, it is clear that the interrelationship about which the Supreme Court was disturbed in *Beacon Theatres* is not obscured by the proposed separation since all considerations relevant to the reasonableness of Defendants' conduct will be presented in the trial here of the liability issue.

In *LoCicero v. Humble Oil,* 52 F.R.D. 28 (E.D.La.1971), an antitrust case in which separate trial was ordered on damage issues, the published opinion makes it clear that use of the same jury was contemplated for trial of both liability and damage issues. A recent antitrust case that follows *LoCicero* in ordering separate trial of damage issues fails to mention separate juries. *Ungar v. Dunkin Donuts,* 68 F.R.D. 65 (E.D.Pa. 1975) at 140, note 93. Those cases are, therefore, of little aid to this Court.

The only real discussion found of the issue of whether separate juries may be allowed to determine issues of liability and damages in an antitrust case is that of the United States District Court for the District of Connecticut in *In re Master Key Antitrust Litigation,* supra:

"The defendants' other objection to splitting the liability trial from the damage determination is that this procedure will preclude the use of the same jury for both stages, in violation of the seventh amendment to the Constitution. *Cf. United Air Lines, Inc. v. Wiener,* 286 F.2d 302 (9th Cir.), cert. denied, 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961). The constitutional question turns on whether 'the issue to be [tried to a second jury] is so distinct and separable from the others that a trial of it alone may be had without injustice.' *Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (1931). Here the distinctness of the dam-

age issue seems clear. At the liability stage it will be determined whether the defendants' conduct included violations of the antitrust laws and whether it affected prices. The proof of the alleged conspiracy and of liability to the plaintiffs will be possible without detailed reference to damages, as set out in note 3 supra. Similarly, proof of damages suffered will be possible without detailed reference to liability issues: the issues at this stage will be what the plaintiffs paid for their master key systems and what they would have paid if the defendants had refrained from specific conduct earlier found to be illegal. Thus I find the defendants' constitutional objections unpersuasive and order that separate trials be held on the issues of liability and damages. *Cf. Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16 (5th Cir. 1974); *Swofford v. B & W, Inc.,* 336 F.2d 406, 415 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *LoCicero v. Humble Oil & Refining Co.,* 52 F.R.D. 28 (E.D.La.1971)." 70 F.R.D. at 29.

The Court notes that the United States Court of Appeals for the Fifth Circuit has ordered a new trial on the issue of damages alone in an antitrust case. See *Terrell v. Household Goods Carriers, Bureau,* supra, at 18.

In *Swofford v. B & W, Inc.,* supra, wherein the United States Court of Appeals for the Fifth Circuit upheld the ordering of separate trials on liability and damage issues in a patent case, that Court adverted to the problem of different juries for different issues but found it unnecessary to decide it. 336 F.2d at 415, note 11. Similarly, the United States Court of Appeals for the Ninth Circuit failed to reach the point in *Hosie v. Chicago & Northwestern R. Co.,* supra. 282 F.2d at 642.

In *United Air Lines v. Wiener,* 286 F.2d 302 (9th Cir. 1961), it was held that trial of issues of exemplary damages before a second jury deprived defendant of his right to jury trial because the amount of damages would depend on the degree of culpa-

bility of defendant and, therefore, were not sufficiently "distinct and separable that a separate trial * * * may be had without injustice." Once again, the Court failed to reach the more general question of the use of separate juries for ordinary damage determinations. 286 F.2d at 306.

While discussing the case of *Hosie v. Chicago & Northwestern R. Co.,* supra, Professor Wright made the following pertinent observation:

"A difficult question, as yet unsettled, is whether issues can be ordered tried before different juries. There is no doubt that the court can order separate trials of issues, with the same jury sitting on each trial, and it seems to be accepted that the better and preferred practice is to use the same jury for all issues, even though it may hear the issues at different times. The issue can thus be narrowed to whether the admittedly preferred procedure is constitutionally required. It has been held, on sound ground, that the Seventh Amendment is not violated by the separate submission of the issues to a single jury. (citing *Hosie*) Is there a violation of the constitutional provision if issues are separately submitted to separate juries? The answer rather clearly must be in the negative. Where a single jury has passed on all issues, but error has tainted its verdict on one of the issues, it is quite settled that there may be a new trial before a second jury limited to that single issue, provided that the error requiring a new trial has not affected the determination of any other issue. In this instance the result is that different juries ultimately resolve the issues. An argument that two juries may be used if one jury has first passed on all the issues—though its verdict as to one of them has gone out of the case—but that two juries may not be used in the first instance, seems untenable. The great guaranty of the Seventh Amendment will hardly support such a gossamer distinction.

"There is a limitation that must not be overlooked. In the case stating that a partial new trial may under some circumstances be used, the Supreme Court held that this practice cannot be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. Similarly separate trial of a particular issue cannot be ordered in the first instance where the issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty that would amount to a denial of a fair trial. But this problem goes beyond the question of whether two juries are to be used. In the circumstances described, separate trial, even to the same jury, would be erroneous. Applying these principles to a matter that is of much current interest, separate trial of the issues of damages and of liability in a personal injury case, even to separate juries, is not improper where the two issues are distinct and separate." (footnotes omitted) Wright, *Law of Federal Courts,* 2nd Ed., Chapter 10, § 97, pp. 433–434.

On the basis of the foregoing reasoning and its conclusion that the issues of liability and damages in this action are separable and distinct, this Court holds, while recognizing that the matter is not free from doubt, that Defendants' right to a jury trial would not be violated by trials by separate juries of these two issues. The Court, therefore, finds that a class action would be a superior means of proceeding with this litigation as required by Rule 23(b)(3).

## CERTIFICATION

In accordance with the foregoing, this Court hereby certifies that this cause may proceed as a class action on behalf of the following classes:

1. As to the first claim of the complaint, there is hereby certified a class consisting of all governmental entities within the State of Alabama which have purchased school bus bodies from any Defendant herein on or since January 24, 1971.

2. As to the second claim of the complaint, there is hereby certified a class con-

sisting of all governmental entities within the United States of America and outside the State of Georgia which have purchased school bus bodies from any of Defendants named in said second claim on or since January 24, 1971. Jurisdiction is specifically retained to alter or amend the definition of these classes pursuant to Rule 23(c)(1).

### INTERLOCUTORY APPEALABILITY

The Court is of the strong opinion that this order as it relates to certification of Plaintiff classes herein involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation within the meaning of 28 U.S.C. § 1292(b). As the Court has attempted to set forth in this opinion, this decision required the resolution of several difficult and unsettled legal points. The Court has specifically rested its grant of class action status on its decision that a procedure is available by means of which the damage claims of individual class Plaintiffs may be transferred to other judicial districts. If this conclusion is in error, the Court would not grant national class action status to Plaintiffs' claims herein because of the possibility that this would so heavily burden this Court's docket as to paralyze the federal court system in this district, and because of the impropriety of requiring parties from throughout the United States to try this cause of action in Alabama.

### PLAN OF NOTICE

It is further ORDERED by this Court that Plaintiffs shall, on or before August 1, 1976, propose a plan for the identification and notification of class members at Plaintiffs' expense, together with a proposed form of notice of this action.