**SHELTER REALTY CORPORATION et al., Plaintiffs,**

v.

**ALLIED MAINTENANCE CORPORA-TION et al., Defendants.**

**No. 76 Civ. 341 (MEF).**

United States District Court, S. D. New York.

June 13, 1977.

Pomerantz, Levy, Haudek & Block, by Stanley M. Grossman, Marc I. Gross, Kaplan, Kilsheimer & Foley by Robert N. Kaplan, Sheldan Barr, New York City, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for National Kinney Corp.; Martin London, John M. Delehanty and David S. Elkind, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Prudential Bldg. Maintenance Corp.; Fred A. Freund, John A. Friedman, Mark C. Zauderer and Rena C. Seplowitz, New York City, of counsel.

Law Firm of Malcolm A. Hoffmann, New York City, Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for Allied Maintenance Corp. and Allied Bldg. and Airport Services, Inc.; Malcolm A. Hoffmann, Robert W. Biggar, Jr., for Raymond J. Horowitz, John A. Young and Edward S. Weltman, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for Temco Service Industries, Inc.; Charles G. Moerdler, Lawrence M. Handelsman, Alan Kolod, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for Alpine Industries, Inc.; Barry H. Garfinkel, Edward J. Yodowitz, New York City, of counsel.

Spiro, Felstiner, Prager & Treeger, New York City, for Anchor Cleaning Service, Inc.; William W. Prager, New York City, of counsel.

Ash & Miller, Weil, Gotshal & Manges, New York City, for Arcade Cleaning Contractors, Inc.; Ted M. Wolkof, New York

City, Ira M. Millstein, Richard J. Davis and Robert F. Brodegaard, New York City, of counsel.

S. Edward Orenstein, P. C., New York City, for Coastal Enterprises, Inc.; S. Edward Orenstein, P. C., New York City, Allan M. Pollack, P. C., of counsel.

Martin, Obermaier & Morvillo, New York City, for Eastern Maintenance Service, Inc. and Triangle Maintenance Service, Inc.; Robert G. Morvillo, Thomas Fitzpatrick, New York City, of counsel.

Shea, Gould, Climenko, Kramer & Casey, New York City, for MacClean Service Co., Inc.; Ira Postel, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

The four named plaintiffs seek to maintain this private antitrust action for themselves and the class of persons in New York who purchased building maintenance services directly from the defendants during the period January 1, 1970, through October, 1974. They charge that the twelve defendants, over a period of years, conspired

"to fix the prices to be charged for building maintenance services. Pursuant to said combination and conspiracy defendants agreed to:

"a) submit non-competitive, collusive and complementary bids for contracts with customers and potential customers of building maintenance services;

"b) allocate customers and territories for building maintenance service between and among themselves;

"c) refrain from competing for customers so allocated; and

"d) compensate each other for customers lost to one another."

The complaint, in the quoted portions and elsewhere, tracks to a substantial extent a criminal information upon which all but one of the corporate defendants have been sentenced following pleas of *nolo contendere*.

Plaintiffs have moved under Fed.R.Civ.P. 23(b)(3) and 23(c)(1) and our Civil Rule 11A(c) for a determination that the case may be maintained as a class action. An imposing phalanx of defense counsel resist at every trench and barricade emplaced among the subdivisions of Rule 23. Far from surmounting all those obstacles, defendants insist, plaintiffs can pass substantially none. Thus, it is urged, there is no predominance of common questions; the class device is not superior to others and will not be manageable; plaintiffs are neither typical nor adequate representatives; and decent notice to the class is not practicable. These contentions, though cogently argued, are found insufficient upon final analysis. For the reasons to be briefly sketched, plaintiffs' motion will be granted.

1. *Common Questions Predominate.*

Defendants' opposition to class certification rests largely, though not completely, on the contention that questions affecting only individual members of the proposed class predominate over questions of law or fact common to the class as a whole. The argument is grounded in defendants' characterization of building maintenance services as "individualized services which are tailored to the unique requirements and specifications of each separate customer, sold on the basis of face-to-face negotiations or individually solicited bids, and priced on a customer-by-customer basis." Relying on this view of the non-fungibility of building maintenance services and the individual arrangements for their marketing and distribution, the defendants conclude that, in order for plaintiffs to make out a conspiracy to fix prices, individualized proof on the questions of conspiracy, impact, and damages will be required, thereby rendering a class action improper and inefficient.

The court's view of the plaintiffs' complaint and of the modes of proof required differs in several respects from that taken by the defendants. Although the complaint does make prefatory reference to price-fixing, its focus is on an agreement among the various providers of building maintenance services to reduce competition and thereby indirectly to inflate prices through the submission of non-competitive bids, allocation

of customers and territories, compensation for lost customers, and other, similar anti-competitive devices. It is not price-fixing in its usual guise, but an array of anti-competitive conduct having an indirect effect on the general price level which plaintiffs are attacking. From such a perspective the lack of fungibility of particular products or services ceases to be the critical variable; instead, it is the fungibility of the providers of those services and the alleged steps they have taken in concert to allocate customers and reduce competitive pressures which emerge as the common questions the class must prove to make out its claims.

Plaintiffs urge that there is almost a "presumption" that certification is proper when a conspiracy in restraint of trade is charged. This court need not and does not adopt this sweeping premise. It is enough to say that certification in such cases, where the criterion of predominant common questions and other requirements are satisfied, is by no means unfamiliar. See, e. g., *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 [1976–2 Trade Cases] ¶ 61,215 at p. 70, 546 (E.D.Pa.1976); *In Re Master Key Antitrust Litigation,* 70 F.R.D. 23 (D.Conn.), appeal dismissed, 528 F.2d 5 (2d Cir. 1975); *Barr v. WUI/TAS Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975). See also *Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1363 and n.160 (1976). In certifying a plaintiff class, the courts have found it appropriate to look past surface distinctions among the products purchased by class members or the marketing mechanisms involved when allegations of anti-competitive behavior embracing all of the various products and distribution patterns have been credibly pleaded. E. g., *In Re Master Key Antitrust Litigation, supra.* Identical products, uniform prices, and unitary distribution patterns are not indispensable for class certification in this context.

Defendants' next position is that even if the question of conspiracy *vel non* is a common one, still the proof of *impact,* an element of the cause of action under § 4 of the Clayton Act, 15 U.S.C. § 15, must be made on an individual basis. The clear intendment of a complaint like the one before us is that members of the customer class have been injured by the concerted agreement to quell competition—injured presumably in price and other terms of the contracts. See, e. g., *In Re Sugar Industry Antitrust Litigation, supra,* at pp. 70,555–70,557 and cases cited therein; *In Re Master Key Antitrust Litigation,* 70 F.R.D. 23, 26 n.3 (D.Conn.), appeal dismissed, 528 F.2d 5, 12 n.11 (2d Cir. 1975); *In Re Ampicillin Antitrust Litigation,* 55 F.R.D. 269, 275–76 (D.D.C.1972). How or whether the evidence will sustain the thesis is, of course, a matter for future consideration.

Finally, defendants contend that the question of damages will require individualized proof by absent class members, and that this is in itself sufficient to preclude class treatment. This point proceeds from the familiar proposition that proof of damages is part of the private antitrust plaintiff's cause of action. See, e. g., *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114, 89 S.Ct. 1562, 23 L.Ed.2d 129 and n.9 (1969). But the conclusion outruns the premise. If defendants' argument were uncritically accepted, there would be little if any place for the class action device in the adjudication of antitrust claims. Such a result should not be and has not been readily embraced by the various courts confronted with the same argument. See, e. g., *In Re Sugar Industry Antitrust Litigation, supra,* at p. 70,559. Cf. *Green v. Wolf Corporation,* 406 F.2d 291, 301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The predominance requirement calls only for predominance, not exclusivity, of common questions. There are many causes of action—e. g., securities frauds, consumer injuries—for which each individual plaintiff must show individual damages in order to prevail. This has not barred class certification either in antitrust, see, e. g., *In Re Master Key Antitrust Litigation, supra,* at 26; *In Re Ampicillin Antitrust Litigation, supra,* at 275–76, or in other varieties of suits, see, e. g., *Green v. Wolf Corporation, supra* at 301; *Fogel v. Wolfgang,* 47 F.R.D. 213, 216–17

(S.D.N.Y.1969). It may well eventuate that decision of the common questions, if in plaintiffs' favor, will lead to some generalized or formulary approach to the calculation of damages. See *In Re Sugar Industry Antitrust Litigation, supra,* at pp. 70,561–70,563; *Developments in the Law—Class Actions, supra,* at 1516–1523. But it is unnecessary to predict that in order to conclude, as the court does, that the common questions already visible are fairly to be deemed predominant.

### 2. A Class Action is Manageable and is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy.

Among defendants' several contentions under this heading is the thought that the plaintiffs would be able to litigate their claims without class certification and thus that there is no need to certify the proposed class. This imports a kind of "death knell" conception from the context of appealability, where its life has been troubled enough, see *Korn v. Franchard Corporation,* 443 F.2d 1301, 1304–05 (2d Cir. 1971); *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), to the area of maintainability, where the idea has at most minimal weight.

Defendants also argue that judicial economy would not be served by certifying the proposed class and that serious manageability problems would be spawned. They contend that in certifying the class, the court will create thousands of individual claims that would not otherwise have been brought, taxing the judicial system, to say nothing of the defendants. In its broadest form, the argument is a now familiar assault upon the idea of Rule 23(b)(3) as such. In narrower terms, fairly suited for the court's discretionary appraisal, the argument restates the position that there is not a predominance of common questions making it economical and expeditious to treat these on a class basis. Having passed that—and assuming, as the Rule does, that the individual claims would or should be

heard—the threat of inundation comes from the prospect of individual, duplicative actions rather than this single proceeding.

The treble-damages provision of the Clayton Act, 15 U.S.C. § 15, was designed to encourage private enforcement of the antitrust laws by offering generous recompense to those harmed by the proscribed conduct and simultaneously to erect a deterrent to those contemplating similar conduct in the future. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). These linked objectives cannot be fully realized if large numbers of potential claimants are not afforded an efficient and cost-effective method of vindicating their claims. The class action device is well-suited to afford the desired access. See generally, *Developments in the Law—Class Actions, supra,* at 1359–65, 1371–72.

Defendants next question the court's ability to manage this suit if class action status is granted. This is an argument, necessarily somewhat conjectural in its nature, that has not gathered strength with reiteration. This court joins with the numerous judges and commentators who have deprecated the idea of blocking class suits on threshold predictions of unmanageability. The position was aptly expressed by Judge Coffin in *Yaffe v. Powers,* 454 F.2d 1362, 1365 (1st Cir. 1972):

> "[F]or a court to refuse to certify a class action on the basis of speculation as to the merits of the cause or because of vaguely-perceived management problems is counter to the policy which originally led to the rule, and more especially, to its thoughtful revision, and also to discount too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise."

To like effect are the comments of the Board of Editors of the *Manual for Complex Litigation,* Part I, § 1.43 n.36 (rev.ed. 1973):

> "Dismissal for management reasons, in view of the public interest involved in

class actions, should be the exception rather than the rule."

See also *In Re Sugar Industry Antitrust Litigation, supra,* at pp. 70,563–70,565. Fed.R.Civ.P. 23(d) provides the court with various tools and considerable discretion for the management of class suits. With the assistance of able and cooperative lawyers on both sides, the court is confident that whatever problems may arise in the course of the litigation can be satisfactorily resolved.

3. *Plaintiffs are Adequate Class Representatives and their Claims are Typical of Those of the Class.*

Defendants challenge the ability of the plaintiffs to represent the proposed class on the grounds that the interests of the class and its representatives are not coextensive, but in fact conflict; that plaintiffs lack standing to bring the action; and, finally, that plaintiffs lack the willingness and financial wherewithal to maintain the action. The court finds none of these arguments persuasive.

■ The complaint and supporting materials establish that the proposed class representatives all purchased building maintenance services from some of the defendants during the period of the alleged conspiracy. Thus, their standing to bring this action in their own behalf would not appear to be in doubt.[1] The fact that the purchases were not made from all of the defendants, or that all of the methods through which the conspiracy was allegedly effected were not utilized against the named plaintiffs, is not dispositive of their ability to represent the class. As plaintiffs describe the alleged conspiracy, its modus operandi was, at least in part, to restrict competition by allocating customers and territories among the various defendants; the failure or inability of particular plaintiffs to have dealt with all of the defendants may simply reflect the success of that plan. In any event, the court finds the named plaintiffs' claims sufficiently typical of those of absent class members to justify the granting of representative status.

■ The asserted potential for conflict between class members is of little if any consequence. Friction between direct and indirect purchasers is effectively ruled out by plaintiffs' limitation of the proposed class to only direct customers of the defendants. The likelihood of conflict between past and present customers of the defendants also seems more imagined than real. As plaintiffs point out, while such tension has been regarded as a possible problem in franchise situations, see *Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 29 (S.D.N.Y.1972), in the ordinary commercial relationship, the likelihood of divergent interests between past and present customers is of greatly reduced import and unlikely to cause a schism in the class. See *Hi-Co Enterprises, Inc. v. Con Agra,* [1976–2 Trade Cases] ¶ 61,053 at p. 69,755 (S.D.Ga. 1976).

Finally, defendants allege that the named plaintiffs will not adequately represent the class because they lack sufficient financial resources for the task. Whatever the general state of plaintiffs' finances,[2] the fac-

---

1. Defendants argue that some of the named plaintiffs have "passed on" to tenants, via escalation clauses in their leases, the price increases that resulted from the charged conspiracy. The court concludes that this point—offered to support defendants' positions both on predominance and on standing—is foreclosed by the Supreme Court's decision in *Hanover Shoe v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). The escalation clauses allegedly contained in some of the leases between the named plaintiffs and their tenants do not satisfy the standards enunciated in *Hanover Shoe* for a valid invocation of the "passing on" defense. See also *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

2. In their various submissions to the court, the defendants, on the one hand, say the plaintiffs are so impecunious as to render them inadequate class representatives, and, on the other, argue that plaintiffs have sufficient resources to maintain this action on their own behalf without the necessity of class certification. Without pressing for consistency to the point of foolishness, the court concludes that plaintiffs' finances are sufficient to meet the responsibilities of class representatives.

**40**

tors most salient for the court are plaintiffs' ability to finance the notice to absentees mandated by Fed.R.Civ.P. 23(c)(2), and to retain effective and vigorous counsel to press the action. The various plaintiffs through their counsel have indicated an awareness of their obligation to provide notice to all members of the proposed class, some 10,000 in number, and of their ability to undertake this responsibility. The court, in exercising its general supervisory authority, will act to ensure that the required notice is provided, but that exaggerated and unjustified burdens in this regard are not imposed on the plaintiffs.[3] Secondly, the court notes that to this point, the battery of attorneys retained by the plaintiffs has demonstrated the skill and resolve requisite to the effective prosecution of this action. Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled.

\*　　\*　　\*　　\*　　\*　　\*

In sum, plaintiffs' motion is granted. An order should be settled promptly, embodying a suitable form and procedure for the giving of notice to members of the class.

---

**3.** Defendants also allege that difficulties in identifying customers of the defendants will make the task of providing notice to class members extraordinarily difficult. In part defendants' argument rests on a misconception about the inclusion of indirect purchasers in the proposed class, and is, to that extent, inapposite. Beyond that, the court is aware of no reason to anticipate that the provision of notice to direct purchasers will involve any special problems not ordinarily encountered in class suits.