STATE OF ILLINOIS, Plaintiff,

v.

HUCKABA & SONS CONSTRUCTION COMPANY, General Paving Company, and F. F. Mengel Company, Defendants.

No. S–Civ–75–0096.

United States District Court, S. D. Illinois, S. D.

Dec. 14, 1977.

William J. Scott, Atty. Gen. of Ill., Thomas M. Genovese, Lee H. Weiner, Thomas J. Ciechanowski, Asst. Attys. Gen. of Ill., Chicago, Ill., for plaintiff.

Willis P. Ryan, Ryan & Cini, Ltd., Mattoon, Ill., Robert G. Heckenkamp, Heckenkamp & Fuiten, Springfield, Ill., Stanley B. Block, Allan E. Lapidus, Vedder, Price, Kaufman & Kammholtz, Chicago, Ill., for defendants.

Paul E. Adami, Mohan, Alewelt & Prillaman, Springfield, Ill., amicus curiae, for Sangamo Const. Co.

Nicholas D. Chabraja, John P. Messina, Lisa Salkovitz, Jenner & Block, Chicago, Ill., amicus curiae, for Orr Const. Co.

## MEMORANDUM ORDER

J. WALDO ACKERMAN, District Judge.

The State of Illinois seeks a partial summary judgment on the issue of liability pursuant to F.R.Civ.P. 56(a). It asserts that the defendants are the same defendants against whom a judgment of conviction was rendered in a prior criminal antitrust action brought by the United States. *United States of America v. Huckaba & Sons Construction Co., et al.,* S–Cr–74–3 (S.D.Ill.1974). It asserts further that the conviction was had on the same facts as those presently pleaded in its complaint. For the purposes of this memorandum order, such assertions will be taken as true.

The motion is premised on the doctrine of collateral estoppel, in effect saying that defendants can assert no defense—being es-

topped from doing so by the doctrine. Again, for the purposes of this order, I will assume that the doctrine has that effect. Thus the focus is sharpened to the pivotal question: Can the doctrine here be invoked by plaintiff?

Since plaintiff's action is statutory, I look first to the statute—Section 5(a) of the Clayton Act. 15 U.S.C. § 16(a):

> A final judgment or decree heretofore or hereinafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be *prima facie evidence against such defendant* in any action or proceeding brought by any other party against such defendant under said laws or by the United States under Section 15(a) of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgment or decrees entered in actions under Section 15(a) of this title. (Emphasis added.)

I have emphasized the prima facie aspect of the conviction or judgment for the reason that defendants view this as a delimitation while the State views it as a jumping off place. Let me make my meaning more precise. That a prior judgment is prima facie evidence simply means that a plaintiff can shift the burden of proof to the defendant—but it does not preclude a defendant from putting up a defense. Plaintiff's case is then made with the judgment but defendant still has his day. Accordingly, defendants argue that since they have a right to defend—albeit that the burden is on them—the motion should be denied. Another way of putting this is that saying that a judgment is prima facie evidence is not the same thing as saying that it is conclusive. If we stop here, defendants are right, and the motion should be denied.

However, plaintiff argues that not only is the prior conviction prima facie evidence, but something a great deal more—in effect, conclusive, based on the doctrine of collateral estoppel. This doctrine is not enunciated in the statute—so the question is, is the doctrine otherwise available.[1] A recourse to policy and legislative history may aid in the search for intent.

That Congress intended to ease the burden for plaintiffs is clear.[2] There was also a sly intent—sly in the best sense of the word—to encourage consent decrees as witnessed by the congressional abjuration that a consent decree was *not* to be prima facie evidence.[3] But these intentions so easily garnered are not of much help in answering our question—hence we turn to legislative history for whatever clues it may give us.

It turns out that way back in 1914 the House version did make a prior judgment conclusive evidence in a subsequent action.[4] But the Senate demurred even though they thought there were "considerations of public policy which favor the House provision of conclusiveness".[5] What the Senate feared was the then extant notion that due process was antithetical to conclusiveness and that its inclusion would work a consti-

---

1. This issue has not only been ably briefed by the parties and amici curiae but has been the subject of discussion by a number of commentators. See generally, McWilliams, Federal Antitrust Decrees: Should They Be Given Conclusive Effect in a Subsequent Private Action? 48 Miss.L.J. 1 (1977), and Comment, 43 U.Chi.L. Rev. 338 (1976), both of which argue that the application of collateral estoppel is not precluded by Section 5(a) and Comment, 85 Yale L.J. 541 (1976) which arrives at the opposite conclusion.

2. See, 51 Cong.Rec. 1964 (1914), remarks of President Wilson; *Emich Motor Company v.*

*General Motors Corp.*, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951); and *State of Michigan v. Morton Salt Co.*, 259 F.Supp. 35 (D.C.Minn.1966).

3. See also, *Twin Ports Oil Co. v. Pure Oil Co.*, 26 F.Supp. 366, 371 (D.C.Minn.1939) and *State of Michigan v. Morton Salt Co., supra*, n.2 at 59.

4. 51 Cong.Rec. 9200 (1914).

5. S.Rep. No. 698, 63rd Cong., 2d Sess. 45 (1914).

tutional infirmity. Therefore the Senate version was accepted and became law, for the House, too, was fearful that conclusiveness might taint their version,[6] so prior judgments were characterized as prima facie evidence.

The fears of Congress went unrequited. It so evolved that conclusiveness, that is, collateral estoppel, was not violative of due process. The notion had prevailed that for an estoppel to be created, the parties in the second action had to be the same as in the first, but as has been said, that law did not so evolve.[7]

Thus, plaintiff argues that the inclusion of the prima facie standard—because Congress was then being wholesomely trepidatious—does not preclude the use of subsequent developments in the common law even though Congress rejected language which would have achieved a similar result because of what turned out later to be groundless fears. In other words, what Congress meant, according to plaintiff, was that plaintiff at a bare minimum could use the prior conviction as prima facie evidence and any other rules of the common law as might be available from time to time.[8]

Of course, defendants argue the converse, stating that the use of the words "prima facie" by implication preclude the prior judgment from being conclusive—else why use the word. They also buttress their arguments by attempts in the 1950's to amend the section so that a prior judgment for the government against X would be as conclusive as against X when used by another party.[9] Notwithstanding, the prima facie standard remained intact. From these rebuffs, defendants argue that the intent of Congress shines through, that is, that conclusiveness in 1914 was precluded. But it is not apparent to me how inaction by Congress in the 1950's can shed light on what it did do in 1914. I would not say that rebuffs in a given context might not shed light—only that they do not do so here.

One would suppose that between 1914 and to date, we would have an authoritative pronouncement—but such is not the case. Of the many cases cited to me by both sides, most merely seek to define the scope of the estoppel [10] while others are distinguishable on other grounds [11] and only a few need to be examined with any particularity. *Purex Corporation Ltd. v. Proctor and Gambel Company*, 308 F.Supp. 584 (D.C.Cal.1970), *aff'd on other grounds*, 453 F.2d 288 (9th Cir. 1971), appears to be one. There Purex sought to use a Federal Trade Commission ruling to collaterally estop defendant Proctor and Gambel from litigating the issue of liability in a treble damage action. The court held that while the FTC order was a final judgment within the meaning of the section, the doctrine of collateral estoppel could not be utilized.[12] The court there apparently relied heavily upon *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed.

---

6. 51 Cong.Rec. 16275 (1914).

7. Compare, *Buckeye Powder Co. v. E.I. duPont deNemours Powder Co.*, 248 U.S. 55, 63, 39 S.Ct. 38, 63 L.Ed. 123 (1918) with *Bernhard v. Bank of America Nat'l Trust & Savings Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942) and *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

8. See, *McCook v. Standard Oil of California*, 393 F.Supp. 256, 259 (C.D.Cal.1975).

9. See, H.R. 7905, 81st Cong., 2d Sess. (1950). A similar attempt was made in 1966, but also failed. See, S. 2512, 89th Cong., 2d Sess. (1966).

10. See, *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir. 1950), reversed on other grounds, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Deluxe Theatre Corp. v. Balaban & Katz*, 95 F.Supp. 983 (N.D.Ill.1951); *New Jersey Wood Finishing Co. v. Minnesota Mining and Manufacturing Co.*, 332 F.2d 346 (3rd Cir. 1964), aff'd 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); *Richfield Oil Corp. v. Karseal Corp.*, 271 F.2d 709 (9th Cir. 1959), cert. den. 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543 (1960); *Harrison v. Paramont Pictures*, 115 F.Supp. 312 (E.D.Pa.1953), aff'd 211 F.2d 405 (3rd Cir. 1954).

11. See, e. g., *U.S. v. Grinnell Corp.*, 307 F.Supp. 1097 (S.D.N.Y.1969).

12. *Purex, supra*, at 589–90.

534 (1951).[13] In *Emich* the Supreme Court was presented with the scope of the prima facie standard.[14] It did not concern itself with the question before me but referred only to the "general doctrine of estoppel" to determine the scope of the section.[15] I need not belabor the point that the concept of the prima facie standard involves elements of estoppel—by definition. My reading of *Emich* leads me to the conclusion that their concern with the meaning of prima facie does not mean that a party cannot look beyond their definition to other remedies. Thus it seems to me the *Purex* opinion is bottomed on an unsound foundation. I also might note in passing that in the *Purex* case, the plaintiff sought to invoke for the purpose of collateral estoppel, a prior proceeding where there had been no right to a jury trial. Such a prior proceeding in my opinion could never be more than prima facie evidence in a subsequent proceeding and for that reason alone.[16]

Two cases do support the proposition that the doctrine of collateral estoppel is available. These cases are *McCook v. Standard Oil of California*, 393 F.Supp. 256 (C.D.Cal. 1975) and *Fleer Corp. v. Topps Chewing Gum, Inc.*, 415 F.Supp. 176 (E.D.Pa.1976). While not germane to the issues or holding in *McCook*, the court did observe that legislative history seemed:

> . . . to suggest that Congress only intended to set a minimum standard for the effect of prior government antitrust judgments, thereby leaving the courts free to apply in accordance with constitutional limitations any common law doctrines which would increase the effect of the prior judgment beyond the prima facie evidence standard. *McCook, supra*, at 259.

In *Fleer*, the defendant sought to collaterally estop the plaintiff in pleading a favorable FTC ruling in defendant's favor. While the motion was denied for other reasons, the court did state:

> [i]t seems odd that a statutory provision which was enacted to strengthen antitrust plaintiffs should now be interpreted to make them worse off in many cases than they would have been without the enactment. *Fleer, supra*, at 185.

In effect, these cases suggest that Congress intended in Section 5(a) to provide what it thought it constitutionally could, leaving the field open should time and the course of an enlarging jurisprudence bring about other concepts.

■ I therefore conclude that plaintiff is right, that defendants are estopped from pleading any defense and that the motion for summary judgment should be allowed. It seems clear to me that the intent of Congress in 1914 was, so to speak, to play it safe, to give to a plaintiff what they thought they could and leave anything "more" to the passage of time and the course of future events. In my opinion, this "more" is now available to plaintiff in the invocation of the doctrine of collateral estoppel which no longer carries any possibility of constitutional infirmity.

This is not to say that with this rendition, that willy-nilly, I must allow the motion. While for the purposes of this order I have assumed that the facts are the same in this case as in the prior criminal action—the allowance of this assumption must be tested. If the facts or some of them are not the same, obviously, defendants are entitled to have them tried. Accordingly, ruling is reserved pending the submission of additional briefs—plaintiffs shall have thirty

---

13. *Purex, supra*, at 589.

14. The *Emich* Court, 340 U.S. at 566, 71 S.Ct. at 413 defined the issues addressed in that opinion as follows:
    The issue we must determine, as defined in our order granting review, is "whether the Court of Appeals erred in construing § 5 [now § 5(a)] of the Clayton Act . . . as not permitting: (a) the admission in the instant case of the indictment in the antecedent criminal case against respondents, nor (b) the judgment therein to be used as evidence that the conspiracy of which respondents had been convicted occasioned Emich Motors' cancellation."

15. 340 U.S. 558 at 568, 71 S.Ct. 408, 413.

16. See, *Rachel v. Hill*, 435 F.2d 59 (5th Cir. 1970).

days, defendants fifteen days to answer and plaintiff fifteen days to reply. I realize that this opinion, involving as it does a controlling question of law, will engender a substantial ground for differences of opinion and accordingly this order is certified under the provisions of 28 U.S.C. § 1292(b) for immediate appeal as such, in my opinion, will materially advance the ultimate termination of this litigation.

In summary, therefore: It is my opinion that

(1) 15 U.S.C. § 16(a) does not preclude the application of the doctrine of collateral estoppel;

(2) Plaintiff's motion for partial summary judgment is reserved pending the submission of additional briefs; and

(3) Certificate of importance allowing immediate interlocutory appeal is granted.