In re INDEPENDENT GASOLINE
ANTITRUST LITIGATION.

M.D.L. No. 267.

United States District Court,
D. Maryland.

June 8, 1978.

Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Rodney O. Thorson, David L. Foster, Michael F. Rahill, Baddia J. Rashid, John C. Fricano, U. S. Dept. of Justice, Washington, D. C., for United States.

Max S. Stadfeld, Baltimore, Md., Harold Brown, Boston, Mass., David Berger, H. Laddie Montague, Jr., Warren Rubin, Philadelphia, Pa., for Philip Clarke, et al.

William C. Sammons, Tydings & Rosenberg, Baltimore, Md., Gary J. Katz, Baltimore, Md., Kohn, Savett, Marion & Graf, Philadelphia, Pa., Harold E. Kohn, Jerry S. Cohen, Michael D. Hausfeld, Washington, D. C., for Allstates Termite Control Co., et al.

William A. Hylton, Jr., Blades & Rosenfeld, P. A., Baltimore, Md., Aaron M. Fine, Arthur M. Kaplan, Winer & Einhorn, P. C., Philadelphia, Pa., for Algon Cab Co., et al.

Leonard Barrack, Philadelphia, Pa., for Feasterville Motors, Inc.

Stanley M. Grossman, New York City, for Irving Gartenberg.

Pomerantz, Levy, Haudek & Block, New York City, for Irving Gartenberg and Douglas M. Colbert, Administrator of the Estate of Leonard M. Colbert.

Julius Levy, New York City, for Douglas M. Colbert, Administrator of the Estate of Leonard M. Colbert.

Adlai S. Hardin, Jr., Richard C. Tufaro, New York City, John Henry Lewin, Jr., James K. Archibald, Venable, Baetger & Howard, Baltimore, Md., for Amerada Hess Corp.

William Simon, Ray S. Bolze, Roger C. Simmons, Washington, D. C., George J. Goldsborough, Jr., Goldsborough & Collett, Easton, Md., for Ashland Oil Co.

Edward N. Sherry, Kenneth H. Holmes, New York City, Keith W. Blinn, Houston, Tex., Wilbur D. Preston, Jr., Nevett Steele, Jr., Baltimore, Md., for Continental Oil Co. & Kayo Oil Co.

James H. Kelley, Washington, D. C., Morton A. Sacks, Baltimore, Md., for Crown Central Petroleum.

Seymour Kurland, Philadelphia, Pa., for The Meadville Corp.

David F. Albright, Semmes, Bowen & Semmes, Baltimore, Md., for Petroleum Marketing Corp.

Lawrence S. Greenwald, Baltimore, Md., David A. Donohoe, Christopher G. Gillam, Edward L. Rubinoff, Washington, D. C., for SIGMA.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

### I. Introduction

This litigation comprises six private, treble damage antitrust actions either brought in this district or transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings.

The defendants are Amerada Hess Corporation, Ashland Oil, Inc., Continental Oil Company, Kayo Oil Company, Crown Central Petroleum Corporation, Meadville Corporation, and Petroleum Marketing Corporation, principal marketers of independent brand gasoline in the Middle Atlantic states,[1] and Society of Independent Gasoline Marketers of America (SIGMA), a trade organization to which most of the defendants belong.[2] The complaints, paralleling a prior Government indictment and civil complaint filed June 1, 1976, allege that the defendants, during the period January 1, 1967 to November 30, 1974, engaged in a conspiracy to "fix, raise, maintain and stabilize" the retail prices of gasoline, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. On August 30, 1977, a jury in this court found five of the corporate defendants—Hess, Ashland, Kayo, Meadville, and PMC—guilty of conspiring to fix the retail price of gasoline; Continental and Crown were acquitted.

Now before the court are plaintiffs' motions, brought pursuant to Federal Rule of Civil Procedure 23, to certify classes consisting of four separate categories of retail gasoline consumers and one class of gasoline dealers in the Middle Atlantic region. Certification is sought for the following classes:

1. *Taxicab Company Class:* "All individuals, partnerships, corporations and other non-governmental entities, engaged in the business of furnishing taxicab or limousine services within the Middle Atlantic States, who within the period January 1, 1967 to November 30, 1974 purchased at retail in those States gasoline marketed by one or more of the defendants directly from any such defendant or from a subsidiary or franchised dealer of such defendant." The proposed class representatives are the four plaintiffs in *An-Roe Cab Co. v. SIGMA, et al.,* B-76-928.

---

1. New York, Pennsylvania, New Jersey, Delaware, Maryland, Virginia, and the District of Columbia define the relevant geographic region.

2. Several individuals who were originally named defendants have been voluntarily dismissed from the actions by stipulation.

2. *Motor Vehicle Dealer Class:* "All motor vehicle dealers located within the Middle Atlantic States, who within the period January 1, 1967 to November 30, 1974, purchased at retail in those States gasoline marketed by one or more of the defendants directly from any such defendant or from a subsidiary or franchised dealer of such defendant." The proposed class representatives are the two plaintiffs in *Feasterville Motors, Inc., et al. v. Amerada Hess Corp., et al.,* B–76–1938.

3. *Company Issued Credit Card Class:* "All individuals, partnerships, corporations and other non-governmental entities located in the Middle Atlantic States (other than members of classes 1 and 2), who within the period January 1, 1967 to November 30, 1974, purchased at retail in those States gasoline marketed by one or more of the defendants directly from any such defendant or from a subsidiary or franchised dealer of such defendant and utilized a credit card issued by such defendant in making such purchase." The proposed class representative is the plaintiff in *Colbert v. SIGMA et al.,* B–77–1533.

4. *Credit Class:* "All individuals, partnerships, corporations and other non-governmental entities located in the Middle Atlantic States (other than members of classes 1, 2 and 3) who within the period January 1, 1967 to November 30, 1974, purchased at retail in those States gasoline marketed by one or more of the defendants directly from any such defendant or from a subsidiary or franchised dealer of such defendant, making such purchase on a credit card not issued by a defendant or on a charge account." The proposed class is sought to be represented jointly by the plaintiffs in *Allstates Termite Control Company, Inc. v. Amerada Hess Corp., et al.,* B–76–861, and *Gartenberg v. SIGMA, et al.,* B–76–1939.

5. *Gasoline Dealer Class:* "All individuals, firms, corporations (other than any business entity that is or has been controlled by any of the defendant Oil Companies) located throughout the states of New York, Pennsylvania, New Jersey, Delaware, Maryland, Virginia and the District of Columbia which are or have been engaged in the retail sale of gasoline to the public during the relevant time period beginning early 1967 and continuing thereafter until November, 1974 which purchased gasoline for sale at retail to the public from Amerada Hess Corporation, Ashland Oil Incorporated, Continental Oil Company, Kayo Oil Incorporated, Crown Central Petroleum Company, Meadville Corporation and/or Petroleum Marketing Corporation during the relevant time period." The proposed class representative is the plaintiff in *Clarke v. Amerada Hess Corp., et al.,* B–76–842.

The motions for class certification, contested vigorously by the defendants, have been extensively and ably briefed and argued by the parties. Additionally, the court has considered extensive class action discovery materials provided by the parties and, furthermore, has the benefit of knowledge of the gasoline industry obtained while presiding over the lengthy criminal trial.

■ Certification of each class is sought under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, plaintiffs must satisfy the requirements of Rule 23(b)(3):

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs have the burden of demonstrating that each prerequisite of Rules 23(a) and 23(b)(3) is satisfied. *Windham v. American Brands, Inc.,* 565 F.2d 59, 64 n. 6 (4th Cir. 1977) (en banc), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).

In deciding the class determination issue, the court benefits, of course, from the guidance provided by the Fourth Circuit's recent *en banc* opinion in *Windham v. American Brands, Inc., supra.* The Fourth Circuit affirmed the district court's denial of class certification in an antitrust action brought by South Carolina tobacco growers. *Windham* will be discussed later in some detail. At this point, however, the court notes that *Windham* does more than hold merely, as plaintiffs suggest, that class certification is primarily within the discretion of the district court; *Windham* does set forth substantive principles of law. On the other hand, however, it is quite clear that *Windham* is not a talismanic incantation, the mere invocation of which by antitrust defendants will preclude class certification. *Windham* anticipates a careful analysis of the facts of each case under Rule 23.

■ The court ascribes little weight to plaintiffs' observation that class action status has never been denied in a civil action which has been preceded by criminal convictions. The Fourth Circuit has emphatically rejected the notion that some sort of rebuttable presumption exists in favor of class certification in antitrust actions generally. *Windham,* 565 F.2d at 64 n. 6. There is no reason why such a presumption would be any more valid in cases following criminal proceedings. The criminal convictions do provide prima facie evidence of the existence of a conspiracy. 15 U.S.C. § 16. However, this evidence is always subject to rebuttal. *Windham,* 565 F.2d at 69 n. 32.[3] In these cases, moreover, not all defendants have previously been convicted. Finally, the court observes that plaintiffs' conspiracy theory may differ from that proved by the Government at the criminal trial. Thus, the prior criminal convictions afford no reason why the court's analysis under Rule 23 should be any less thorough than would otherwise be true.

## II. Rule 23(a)

Rule 23(a) requires that four conditions to class certification be satisfied. They are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

### A. *Numerosity.*

■ Plaintiffs estimate the size of each of the proposed classes to number in the hundreds, if not thousands. It is clear that the classes are so numerous that joinder of all members is impracticable. Plaintiffs' present inability to specify the number and identities of potential class members with greater precision is not a bar to class certification. *See, e. g., In Re Plywood Anti-Trust Litigation,* 76 F.R.D. 570, 578 (E.D. La.1976); *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 335 (E.D.Pa.1976). The proposed class definitions are not ambiguous.

---

**3.** The Fourth Circuit thus would reject the suggestion that a criminal conviction not only provides prima facie evidence but also raises collateral estoppel against antitrust defendants. *See Illinois v. Huckaba & Sons Constr. Co.,* 442 F.Supp. 56 (S.D.Ill.1977).

### B. *Commonality.*

█ The question of whether a conspiracy existed to fix prices is a common question sufficient to satisfy the requirement of Rule 23(a)(2). *See, e. g., In Re Plywood,* 76 F.R.D. at 578–79; *In Re Sugar,* 73 F.R.D. at 335–36. Such a finding, however, is entirely distinct from the question whether common questions predominate, so that Rule 23(b)(3) is satisfied.

### C. *Typicality and Adequacy.*

█ The typicality and adequacy requirements of Rules 23(a)(3) and 23(a)(4) are closely related. *See, e. g., In Re Plywood,* 76 F.R.D. at 579; *Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443, 452 (M.D.Ga.1975), *appeal dismissed,* 557 F.2d 1218 (5th Cir. 1977). The interests of the class representative should be roughly coextensive with those of the class members he seeks to represent. *See In Re Sugar,* 73 F.R.D. at 336. At the very least, the interests of the class representative must not be antagonistic to those of the class, and the representative must be capable of competent prosecution of the action. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968).

It is clear in all actions that the broad outlines of the typicality and adequacy prerequisites are met. Each representative in the consumer actions was a purchaser of gasoline from one or more of the defendants during at least part of the relevant time period, possessing interests similar to any consumer; in the dealer action, Clarke's interests are similar to those of an average dealer. Defendants do not contest the competence and experience of counsel for plaintiffs. Defendants do, however, raise certain particular challenges to the typicality or adequacy of several representatives.

█ *Company Issued Credit Card Class* —The class is represented by Douglas Colbert, suing in his capacity as administrator of the estate of Leonard Colbert, who died after filing suit. Defendants argue that Douglas Colbert's role as class representative would conflict with his fiduciary duties as administrator of the estate. Although such a conflict may be present in some cases, the court finds no disabling conflict here. The Colbert estate has only three beneficiaries, all of whom have consented to the maintenance of the action. The court also notes that the action was instituted by the deceased, not originally by the administrator. In these circumstances, the court finds that Colbert's fiduciary role does not preclude his representation of the class. *See, e. g., Markewich v. Adikes,* 76 F.R.D. 68, 74 (E.D.N.Y.1977); *State Teachers Retirement Bd. v. Fluor Corp.,* 73 F.R.D. 569, 571–72 (S.D.N.Y.1976); *Clark v. Cameron-Brown Co.,* 72 F.R.D. 48, 54–55 (M.D. N.C.1976); *Seiden v. Nicholson,* 69 F.R.D. 681, 689 (N.D.Ill.1976).

█ Defendants also argue that the capacity of the estate to finance the action is in doubt. This court has previously ruled it sufficient that plaintiffs state under oath their awareness of their financial obligations and their willingness to assume those obligations. Memorandum and Order, M.D.L. No. 267 (D.Md. May 12, 1977); *see, e. g., Sanderson v. Winner,* 507 F.2d 477, 479 (10th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 157, 43 L.Ed.2d 780 (1975); *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34, 39–40 (S.D.N.Y.1977). The court adheres to that ruling and finds that Colbert is an adequate class representative.

█ *Motor Vehicle Dealer Class* —Defendants contend that because Feasterville Motors and Foreign Wheels were incorporated in 1974 and 1973 respectively, they are inappropriate representatives for class members who may have claims arising from sales dating back to January 1, 1967, when the conspiracy allegedly began. However, in the court's view, typical and adequate class representation does not necessarily require that the representative have made purchases throughout the entire alleged pe-

riod of conspiracy. Plaintiffs allege a single, continuing price-fixing conspiracy originating in 1967. Although plaintiffs' claims for damages may not extend throughout the entire period, the court is confident that plaintiffs will fairly and adequately attempt to present evidence of violation and impact throughout the period January 1, 1967 to November 30, 1974. Certainly there is no conflict between the proposed class representatives and other members. Should unanticipated difficulties of representation arise, the court has sufficient means to assure fairness of representation. *See generally Blackie v. Barrack,* 524 F.2d 891, 910–11 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).[4]

*Gasoline Dealer Class*—Defendants' argument that Clarke's claims are atypical because individual proof of injury and coercion are required is discussed later in connection with predominance and manageability. Their arguments concerning fraudulent concealment and financial ability are similar to those made concerning the *Feasterville* action and are rejected for the reasons stated above.

Thus, for the reasons stated above, the court finds the plaintiffs in each action to have satisfied the requirements of Rule 23(a). The court now turns to the more difficult question of compliance with Rule 23(b)(3).

### III. *Rule 23(b)(3)*

■ To satisfy Rule 23(b)(3), plaintiffs must demonstrate that common questions of law and fact predominate over questions affecting only individual class members.

Moreover, it must appear that class actions would be superior to other forms of action; the question of superiority here, as in most cases, turns essentially on whether class actions would be manageable.[5] Because many of the arguments presented to the court go to questions both of predominance and manageability, the court will consider these two major requirements of Rule 23(b)(3) together. Although proof of the existence of a conspiracy to fix prices is, as previously noted, a significant common issue in each action, defendants contend that a number of individual questions of law and fact predominate and make these actions unmanageable.

#### A. *Fraudulent concealment.*

■ The ability of class members to assert claims predating the four-year limitations period of 15 U.S.C. § 15b depends upon proof that the defendants fraudulently concealed the existence of a price-fixing conspiracy. Defendants in all actions argue that the issue of fraudulent concealment raises predominantly individualized questions of fact. To establish a claim of fraudulent concealment in order to avoid a defense of limitations, a plaintiff must prove: (1) fraudulent concealment by the defendant raising the statute together with (2) the plaintiff's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part. *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir. 1974). Defendants argue that failure to discover and exercise of due diligence require individual proof, outweighing common issues.

---

**4.** *Weinberger v. Retail Credit Co.,* 498 F.2d 552 (4th Cir. 1974), is in no way to the contrary. *Weinberger* held merely that one whose claim is barred by an applicable statute of limitations cannot act as a class representative because he *is not even a member of the class he seeks to represent.* 498 F.2d at 556. Defendants do not contend that the claims of any of the plaintiffs in these actions are wholly barred by limitations.

**5.** The court is unpersuaded by defendants' arguments that members of the proposed gasoline dealer class have an interest in maintaining individual actions and have the financial ability

to do so. It seems clear that the choice before the court is essentially between allowing these actions to proceed as class actions and foreclosing the possibility of recovery to almost all would-be claimants. It is unlikely that many members even of the proposed gasoline dealer class would undertake to pursue individual actions. However, even assuming that they could do so, pursuing each claim in a separate action requiring most likely several months of trial time would place an enormous burden on judicial resources. Thus, the court believes that these actions would best be maintained as class actions, provided they are manageable.

However, whether defendants attempted to conceal the alleged conspiracy is clearly a substantial question common to all class members. Furthermore, due diligence, while raising some individual issues, may also invoke certain common proof. The court finds that these common questions will predominate over individual questions, and that proof of the subjective elements of fraudulent concealment will not present significant manageability problems. *See, e. g., In Re Plywood Anti-Trust Litigation,* 76 F.R.D. 570, 586 (E.D.La.1976); *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 348 (E.D.Pa.1976); *Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484, 488 (N.D.Ill.1969); *Minnesota v. United States Steel Corp.,* 44 F.R.D. 559, 569 n. 19 (D.Minn.1968); *see also Cameron v. E. M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir. 1976).

### B. *Releases.*

The *Clarke* defendants argue that, because many gasoline dealers in the proposed class executed releases or covenants not to sue, individual questions are raised as to the validity, scope, and effect of the instruments. However, it appears that most, if not all, of the instruments are of either of two uniform types, one type executed by Crown dealers, the other by Hess dealers. Because of this substantial uniformity, the court believes that construction of the releases will present significant common questions of law and fact.[6] Additionally, should management problems arise, the court notes the possibility of designating subclasses of dealers who have executed releases.

### C. *Counterclaims.*

The *Clarke* defendants have filed a counterclaim against Clarke, alleging pricing in violation of federal statutes and regulations. Defendants in the consumer actions have intimated that they may seek to assert counterclaims for unpaid bills against certain purchasers. It is argued that trial of such counterclaims against numerous class members would result in difficulties in managing the action.[7] However, significant authority supports the view that unnamed class members are not "opposing parties" within the meaning of Federal Rule of Civil Procedure 13. *See, e. g., In Re Sugar,* 73 F.R.D. at 349; *Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 485, 489 (S.D.N.Y.1973). Even assuming that such counterclaims may be asserted, the court finds no insurmountable manageability problem. For example, if counterclaims are asserted and maintained, they can either be resolved together with individual claims for damages or, if necessary, tried separately under Federal Rule of Civil Procedure 42(b). *See Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 450 (E.D.Pa.1975).

### D. *The elements of an antitrust action.*

Three essential elements must be established in a private antitrust action: (1) a violation of the antitrust law, (2) direct injury to the plaintiff from such violation, and (3) the amount of damages sustained by the plaintiff. *Windham,* 565 F.2d at 65. Defendants argue that each of these elements will require individual proof; as a consequence, individual issues will predominate, and class actions are not the superior means of adjudicating the controversies.

#### 1. *Violation*

*Gasoline purchaser classes*—As stated previously, it is clear that the existence and scope of the alleged conspiracy present questions common to all proposed class

**6.** The interpretation of the effect of a release upon codefendants is based on the intention of the parties to the instrument. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 346–48, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Although the question of intention is one of fact which may involve individual questions concerning the circumstances surrounding the execution of the document, significant evidence of intention is the language employed by the parties. *See id.* at 347, 91 S.Ct. 795.

**7.** At the present time defendants give no indication of how many counterclaims they may seek to assert.

members. To the extent that defendants argue that proof of the operation of the conspiracy in individual markets raises individual issues, their argument is similar to that discussed later in the court's consideration of injury.

Defendants, however, raise a particular challenge based on purchases from independent Hess and Crown dealers, i. e., operators of non-company owned stations. Defendants assert that purchasers from the independent dealers will be required to prove that those dealers participated in the conspiracy, either by agreement or through company coercion.[8] They argue that plaintiffs must present individualized proof relating to each independent Crown and Hess dealer in order to establish claims based on purchases from those dealers. However, the court finds that any such individualized proof of this portion of the alleged conspiracy will not predominate over common questions concerning the conspiracy as a whole and will not present insurmountable manageability problems. The court retains adequate flexibility under Rule 23(c) to cope with any such difficulties that may appear in the future course of this litigation.

*Clarke*—Defendants in the gasoline dealers action argue that each dealer will need to prove he was coerced into setting fixed retail prices; they assert further that a dealer will be able to recover only upon proof that such coercion resulted in squeezing his margin between wholesale price and retail price. The court, however, agrees with plaintiff that this argument is based on a misconception of plaintiff's theory. Plaintiff contends that as a result of the alleged retail price fixing conspiracy, wholesale prices were also increased, i. e., that a direct nexus existed between retail prices and wholesale prices. A dealer's recovery would be based on the proven increase in wholesale prices charged to him. Coercion to fix the retail price at which he subsequently sold the gasoline would, therefore, be irrelevant, under plaintiff's theory, to his recovery. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 487–94, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *see also Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736–47, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).[9] Expressing no opinion on the merits of plaintiff's theory, of course, the court finds that the violation question presents predominantly common questions of law and fact.

### 2. *Fact of injury.*

Defendants in all actions argue strenuously that the nature of the alleged conspiracy makes common proof of the fact of injury to each class member impossible. Rather, they contend, each member will be required to prove individually that the conspiracy resulted in a higher retail price for the gasoline he purchased at a particular time and location. Defendants correctly point out that the evidence presented at the criminal trial showed no more than that the conspiracy was imperfect and lacked uniformity. The basic theory of the criminal action was that the conspiracy operated when necessary and as much as possible to stabilize prices, but that its effects were continually eroded by outside competitive market forces. The evidence showed that gasoline prices fluctuated widely both by location and time. Defendants contend that it is clear that plaintiffs will be unable to prove a general level of price inflation throughout the region in the relevant time period, or in any part of it. Consequently, they argue, a class action would dissolve into a series of "mini-trials" on the issue of whether each plaintiff suffered injury resulting from the alleged conspiracy.

---

**8.** This issue, of course, goes to the question of impact as well as violation.

**9.** The court considers it inappropriate to its class certification decision to speculate whether this case presents one of the "limited circumstances" under which a pass-on defense might be permitted. *See Illinois Brick,* 431

U.S. at 724, 735–36, 97 S.Ct. 2061; *Hanover Shoe,* 392 U.S. at 494, 88 S.Ct. 2224.

Likewise, any potential conflicts between the gasoline dealer class and the other classes, as well as the possible assertion of an *Illinois Brick* indirect purchaser defense, concern the merits of the actions, not whether they should be maintained as class actions.

Plaintiffs, in response, assert that they intend to produce expert economic and statistical testimony to establish proof of a definable increase in price levels at all times throughout the region. They contend that it will be possible to prove that because of the conspiracy all prices, even though fluctuating, maintained a level at a measurable amount in excess of what prices would have been absent the conspiracy. Such proof, common to all class members, is asserted to be sufficient to demonstrate economic impact upon all class members.

The Fourth Circuit's decision in *Windham* makes clear that proof of impact is crucial to a private antitrust action and must be established as to each class member:

> The gravamen of the complaint is not the conspiracy; the crux of the action is injury, individual injury. While a case may present a common question of violation, the issues of injury and damage remain the critical issues in such a case and are always strictly individualized.

565 F.2d at 66 (footnotes omitted). Thus, there can be no question that proof of a conspiracy to fix prices is only the beginning of plaintiffs' burden. Plaintiffs must establish that the conspiracy had the effect of raising prices and, more importantly, that the price increase affected each member of the class. It is clear that plaintiffs cannot satisfy their burden if they can prove no more than that prices were inflated only at certain times and places. The Fourth Circuit has specifically disapproved the concept of "[g]eneralized or class-wide proof of damages." *Windham,* 565 F.2d at 66. Proof merely that the conspiracy had some effect on market prices would be insufficient under *Windham* to establish plaintiffs' claims.

However, plaintiffs maintain that they will endeavor to prove more than a generalized, average impact on market prices. As noted above, they assert that expert testimony, based on statistical and economic data, will demonstrate that the alleged conspiracy had a definable inflationary impact on all prices.

In the court's view, defendants' argument that the nature of the conspiracy makes such proof impossible reduces essentially to a contention that plaintiffs will not be successful in proving what they assert they can prove. Although the court must, of course, carefully consider the facts of the cases, *see Windham,* 565 F.2d at 71 n. 38; *In Re Hotel Telephone Charges,* 500 F.2d 86, 90 (9th Cir. 1974), it is equally true that an inquiry into the merits of plaintiffs' claims is not appropriate in determining whether classes should be certified. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Here, plaintiffs have produced some documentary evidence supporting their assertions that proof of impact on all class members is capable of common proof by statistical and economic analyses of the gasoline market. Although it is not clear at this time that plaintiffs will be successful in this undertaking, the court concludes that they have produced adequate evidence to withstand defendants' challenge. Assuming plaintiffs are able to develop statistical proof of impact, the strength or weakness of such proof is for the jury to decide. The possibility that plaintiffs will not be able to prove their allegations at trial is not a proper basis for denying class certification. *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Neither should it be assumed that plaintiffs will be able to prove no more than what the evidence at the criminal trial indicated. *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 734 (N.D.Ill.1977).

### 3. *Amount of damage.*

The amount of damage suffered by each injured class member is always an individualized question. *Windham,* 565 F.2d at 66. Plaintiffs assert that, as part and parcel of their statistical market analyses, experts will be able to develop a formula defining the amount of inflation attributable to the effects of the conspiracy. As-

suming once more for present purposes that plaintiffs will be successful in developing and proving such a formula, these cases would be among those in which "the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation'"; thus "the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability." *Windham*, 565 F.2d at 68 (footnotes omitted). If a damage formula were successfully established, proof of individual damages would largely consist of production of gasoline purchase records to the jury's satisfaction.[10]

▇ Such proof of impact and damages meets no substantive barrier in *Windham*. The Fourth Circuit, in accord with the weight of circuit court authority,[11] condemned the notions of generalized or class-wide proof of damages and fluid recovery in private antitrust class actions. *Windham*, 565 F.2d at 66, 72. In these actions, however, plaintiffs purportedly will establish some measure of an across the board inflationary impact attributable to the conspiracy, affecting each gasoline purchase made. Defendants will have an opportunity to rebut the economic and statistical foundations of plaintiffs' proof and its asserted uniform applicability. Plaintiffs will not be able to recover absent a showing of injury and damage to each class member. In the court's view, the common proof, using economic and statistical analyses, that plaintiffs propose differs little, if at all, from what an individual plaintiff purchasing at various times and locations might seek to prove. A retail gasoline purchaser, for example, who purchased at a number of different stations throughout the region and the relevant time period would not be precluded from using an economic formula in attempting to establish claims arising from each purchase. Thus, use of such a formula in a class action affects no substantive rights of the defendants.[12]

## IV. CONCLUSION

In view of the understandably heavy reliance placed on *Windham* by the defendants, and because the case represents the Fourth Circuit's only decision on antitrust class actions to date, it is appropriate to point out briefly how these actions differ from the one in *Windham*. The *Windham* plaintiffs asserted three separate causes of action under the antitrust laws; the instant actions simply assert a conspiracy to fix prices. Partly because of the variety of legal theories and partly because of the foreseeable lack of a credible injury analysis and damage formula, it seemed apparent to the district court and the Fourth Circuit that a class action would dissolve into a morass of mini-trials on all claims. This court has stated its reasons for believing that such difficulties can be avoided in the instant actions. The court is confident that *Windham* does not in the least impair this court's ability to certify classes where appropriate, as here.[13]

---

10. The classes are composed either of business entities or of credit purchasers, both likely to have purchase records of some sort. No claims are brought on behalf of cash purchasers of gasoline; a class of cash purchasers would present severe manageability problems. *See City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 72 (D.N.J.1971) (granting certification of classes of business purchasers but denying certification of a class of all consumer purchasers).

11. *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 236 n. 8 (9th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1112–14 (2d Cir. 1973), *vacated on other*

grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

12. A jury in an antitrust case is entitled to rely on reasonable estimates of damages in rendering a verdict. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123–25, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

13. The Ninth Circuit has adopted a reasoned and balanced approach to class actions, having had the opportunity to compare an action properly maintained as a class action with one not. *Compare Blackie v. Barrack*, 524 F.2d 891 (9th

Moreover, these actions differ from those cited by the defendants and by the *Windham* court as examples where class certification was properly denied. Such cases as *Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443 (M.D.Ga.1975), *mandamus denied,* 557 F.2d 1218 (5th Cir. 1977); *In Re Transit Co. Tire Antitrust Litigation,* 67 F.R.D. 59 (W.D.Mo.1975); and *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427 (W.D.Mo. 1973), for example, all involved complicated individual issues other than damage issues, such as franchise agreements or buyer-seller relations. No such issues are present here.

The court has considered a great many decisions granting class certification in circumstances similar in whole or in part to those here. *See, e. g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *In Re Plywood Anti-Trust Litigation,* 76 F.R.D. 570 (E.D.La. 1976); *In Re Folding Carton Antitrust Litigation,* 75 F.R.D. 727 (N.D.Ill.1977); *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34 (S.D.N.Y.1977); *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 (E.D.Pa.1976); *In Re Master Key Antitrust Litigation,* 70 F.R.D. 23 (D.Conn.), *appeal dismissed,* 528 F.2d 5 (2d Cir. 1975); *City of Philadelphia v. American Oil Co.,* 53 F.R.D. 45 (D.N.J.1971); *In Re Sugar Industry Antitrust Litigation,* [1977–1] Trade Cases (CCH) ¶ 61,373 (N.D.Cal.1976); *Dennis v. Saks & Co.,* [1975–2] Trade Cases (CCH) ¶ 60,396 (S.D.N.Y.1975).[14]

█ Assuming that a conspiracy existed among some or all of the defendants to fix prices, the class action device offers the only realistic opportunity for gasoline purchasers injured by that conspiracy to seek redress. Although fully cognizant of the demands that will be placed on the judicial

Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (affirming class certification), *with In Re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir. 1974) (reversing class certification).

**14.** To the extent that any of these cases approved generalized proof of injury and damage,

system, the court, having carefully considered the foreseeable difficulties lying ahead, concludes that all classes should be certified.

Accordingly, it is this 8th day of June, 1978, by the United States District Court for the District of Maryland, ORDERED that plaintiffs' motions for class certification be, and hereby are, GRANTED.

this court must, as previously noted, disagree with their analysis. However, a careful reading of the opinions indicates that many of the courts anticipated that common proof would demonstrate not only general market impact but also injury to each purchaser.