STATE OF ILLINOIS, Plaintiff-Appellee,

v.

GENERAL PAVING COMPANY and F. F. Mengel Company, Defendants-Appellants.

No. 78-1479.

United States Court of Appeals, Seventh Circuit.

Heard Nov. 28, 1978.

Decided Jan. 11, 1979.

Rehearing and Rehearing En Banc Denied Feb. 9, 1979.

Allan E. Lapidus, Chicago, Ill., for defendants-appellants.

Thomas M. Genovese, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.*

CUMMINGS, Circuit Judge.

In January 1974, appellants and Huckaba & Sons Construction Co.[1] were indicted under Section 1 of the Sherman Act. Huckaba pled guilty and appellants were found guilty by a jury. In June 1975, the State of Illinois filed this action seeking treble damages from appellants and Huckaba under Section 4 of the Clayton Act (15 U.S.C. § 15). In its complaint, Illinois alleged the same antitrust violation as in the federal indictment, and the three defendants filed answers denying liability. Subsequently, relying solely on the federal criminal judgment, Illinois moved for partial summary judgment on the issue of liability against all three defendants.

On December 14, 1977, Judge Ackerman filed a memorandum opinion holding that the doctrine of collateral estoppel could properly be invoked by the State to preclude the defendants from asserting any defenses. The court rejected defendants' argument that collateral estoppel was unavailable to the State because Section 5(a) of the Clayton Act made the earlier final judgment only "*prima facie* evidence."[2] However, the court's order reserved summary judgment on liability for 60 days so that the parties might have an opportunity to show the court whether the facts were the same in the Government and treble damage actions. *State of Illinois v. Huckaba & Sons*

*Construction Co.,* 442 F.Supp. 56 (S.D.Ill. 1977). Thereafter, concluding that the actions were brought on the same facts, the district court granted the State's motion for partial summary judgment on the issue of liability even though defendant Mengel's president had earlier filed an affidavit denying his company's guilt. We granted appellants Mengel and General Paving leave to appeal from the two interlocutory orders and now reverse them.

■ On its face, Section 5(a) of the Clayton Act clearly provides that a prior judgment in favor of the Government in an antitrust case shall only have *prima facie* evidentiary effect in subsequent private suits. This results in shifting the burden of proof to defendants, but the statute does not preclude them from putting up a defense. We have so interpreted the statute in *Emich Motors Corp. v. General Motors Corp.,* 181 F.2d 70, 76 (7th Cir. 1950), reversed on other grounds, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 and in *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.,* 323 F.2d 412 (7th Cir. 1963), certiorari denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659. The Supreme Court agreed with our construction of Section 5(a) in *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 690, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604, where Justice Harlan observed that Section 5(a) of the Clayton Act "would seem to be a definitive legislative pronouncement that a government suit cannot be preclusive of private litigation, even

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Huckaba has not appealed from the adverse judgment below and is therefore bound by it. Arcole Midwest Corporation and Orr Construction Company are defendants in related treble damage actions and have filed briefs *amici curiae* as to the effect their guilty pleas might have in those private actions. We need not address that question directly since our decision effectively disposes of the issue.

2. Section 5(a) of the Clayton Act (15 U.S.C. § 16(a)) provides:

"A final judgment or decree heretofore or hereinafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be *prima facie evidence against such defendant* in any action or proceeding brought by any other party against such defendant under said laws or by the United States under Section 15(a) of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgment or decrees entered in actions under Section 15(a) of this title." (Emphasis added.)

though relating to the same subject matter."[3]

■ In holding that the Government's criminal judgment should be given a conclusive effect with respect to the treble damage liability of defendants, the district judge especially relied on *McCook v. Standard Oil of California,* 393 F.Supp. 256 (C.D. Cal.1975), and *Fleer Corp. v. Topps Chewing Gum, Inc.,* 415 F.Supp. 176 (E.D.Pa.1976). *McCook* does not so hold but instead concluded that the prior judgment against Standard Oil constituted only "a rebuttable presumption" (at p. 260). This holding was based on the conclusion that because in that case giving the prior judgment a conclusive effect would deprive the defendant of a jury trial, it would be unfair, if not unconstitutional to do so. The *McCook* court merely alluded to the possibility that Section 5(a) might also prevent application of the doctrine of collateral estoppel, noting that legislative history might suggest that Section 5(a) set only a minimum standard but that nonetheless "many cases have assumed that Section 5(a) fully occupies the area or have so ruled" (at p. 259).

Similarly, the *Fleer* case did not hold that collateral estoppel was applicable to judgments covered by Section 5(a) of the Clayton Act. In fact, the district judge noted that no court had held that the doctrine of collateral estoppel applied to such antitrust litigation, and he too pointed out that various courts have held that Section 5(a), preempted the use of collateral estoppel. The opinion below is the first to hold otherwise since Section 5(a) was enacted in 1914.

Judge Ackerman stated that only one of the cases relied upon by appellants as establishing that the *prima facie* language of Section 5(a) controls actually ruled on the question. He rejected that case, *Purex Corporation Ltd. v. Procter and Gamble Company,* 308 F.Supp. 584 (D.C.Cal.1970), affirmed on other grounds, 453 F.2d 288 (9th Cir. 1971), as "bottomed on an unsound foundation" (442 F.Supp. at 59) and distinguishable because it involved the potential denial of the right to a jury trial. Since he found it "clear * * * that the intent of Congress in 1914 was, * * * to give to a plaintiff what they thought they could and leave anything 'more' to the passage of time and the course of future events" (*id.*), he concluded that a collateral estoppel effect should be available to the plaintiff.

If it were truly clear that the 1914 Congress did intend the doctrine of collateral estoppel, when possible, to supplant Section 5(a), the plaintiff's insistence that such intent must prevail until revoked by subsequent statute might have some plausibility. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117. But even if the legislative history of the 1914 Act were as the plaintiff contends, the 1955 amendments to Section 5(a) rejected the position espoused by plaintiff.

■ In the 1955 amendments, Congress permitted the Government to recover civil damages in an antitrust action by enacting Section 4A of the Clayton Act (15 U.S.C. § 15a) and amending Section 5(a) to include the United States as an "actual damages" plaintiff. Congress simultaneously limited the use of an enforcement action judgment in later damage suits by the United States by making such a judgment only *prima facie* evidence of antitrust violations.[4] By

---

3. To the same effect, see *Purex Corp. v. Procter and Gamble Co.,* 453 F.2d 288, 290 (9th Cir. 1971), certiorari denied, 405 U.S. 1065, 92 S.Ct. 1499, 31 L.Ed.2d 795; *New Jersey Wood Finishing Co. v. Minnesota Mining & Mfg. Co.,* 332 F.2d 346, 358 (3d Cir. 1964), affirmed, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405; *State of Michigan v. Morton Salt Co.,* 259 F.Supp. 35, 58–62, 64–65 (D.Minn.1966), affirmed, *Hardy Salt Co. v. State of Ill.,* 377 F.2d 768 (8th Cir. 1967); *United States v. Grinnell Corp.,* 307 F.Supp. 1097 (S.D.N.Y.1969); *Zuckerman v. E.*

*I. DuPont de Nemours & Co.,* 1953 Trade Cases ¶ 67,468, p. 68,346 (S.D.N.Y.1953).

4. The Supreme Court had previously held in *Local 167 v. United States,* 291 U.S. 293, 298, 54 S.Ct. 396, 399, 78 L.Ed. 804, that in a government civil action for an injunction against violations of Sections 1 and 2 of the Sherman Act, the judgment in a prior criminal antitrust prosecution against the civil defendants "conclusively established in favor of the United States against those who were found guilty that within the period covered by the

reenacting Section 5(a) incorporating these changes but refusing to enact a proposal that enforcement judgments should be given a conclusive effect, Congress clearly indicated that they should not be given such effect.[5]

In fact, Congress has repeatedly refused to adopt proposals that would change the *prima facie* standard of Section 5(a) to a conclusive one. Such proposals were rejected in 1914, 1950, 1955 and again in 1966 (see Note, *Section 5(a) of the Clayton Act and Offensive Collateral Estoppel in Antitrust Damage Actions*, 85 Yale L.J. 541 (1976)), and a similar proposal[6] was not approved by the present Congress.

Moreover, the alleged intent of the 1914 Congress to allow collateral estoppel to work is not clear. The remarks of a few Senators from the floor surely do not prove that Congress intended that the doctrine of collateral estoppel, if and when it evolved, should supplant the *prima facie* standard it was then enacting. If it really intended such a development, Congress could easily have provided that enforcement judgments would have *at least* a *prima facie* effect or could have adopted a similar provision. Since it did not do so, and since subsequent Congresses have not only refused to amend the statute to adopt a conclusive standard after the constitutional concerns evaporated, but instead have actually amended it to extend the *prima facie* standard, we cannot embrace the version of congressional intent pressed upon us by the plaintiff.[7]

■ Finally, the repeated judicial holdings even after the evolution of the doctrine of collateral estoppel that Section 5(a) allows only *prima facie* effect must be given due weight. In light of this background, both the case law and the repeated refusals of Congress to enact the suggested provision providing for a conclusive effect indicate that Section 5(a) is to be read as precluding such an effect.[8] If the *prima facie* evidence standard of Section 5(a) is to be changed, it is for Congress to do so. See *United States v. Cooper Corp.,* 312 U.S. 600, 605–606, 61 S.Ct. 742, 85 L.Ed. 1071.

■ Illinois also relies on the use of the word "estoppel" in Section 5(a). See note 2

indictment the latter were parties to the conspiracy charged." Hence the limitations written into Section 5(a) in 1955 preempted what had been established by *Local 167* to be the Government's common law right of estoppel. *United States v. Grinnell Corp.,* 307 F.Supp. 1097 (S.D.N.Y.1969). This is a further demonstration that Section 5(a) was intended to preempt the common law rule of collateral estoppel.

**5.** The proposal to give enforcement judgments conclusive effect was presented in 1950 and finally rejected when the amendments to Section 5(a) were enacted in 1955. The history of the 1950 consideration of the conclusive effect proposal shows that the major objections to it were based on the feeling that it would be too harsh on defendants, not on concern for its possible unconstitutionality. Hearings on H.R. 7905 (H.R. 8763) before the Subcommittee on the Study of Monopoly Power of the House Committee on the Judiciary, 81st Cong., 2d Sess., ser. 14, pt. 5 (1950); Note, *Section 5(a) of the Clayton Act and Offensive Collateral Estoppel in Antitrust Damage Actions*, 85 Yale L.J. 541, 550–551 (1976).

**6.** H.R. 7647, 95th Cong., 2d Sess. (1978).

**7.** Plaintiff and Judge Ackerman cited two law review articles which offer policy-based arguments that prior enforcement judgments should be given collateral effect in subsequent private damage actions. McWilliams, *Federal Antitrust Decrees: Should They Be Given Conclusive Effect in a Subsequent Private Action?*, 48 Miss.L.J. 1 (1977); Note, *The Use of Government Judgments in Private Anti-Trust Litigation: Clayton Act Section 5(a), Collateral Estoppel, and Jury Trial*, 43 U.Chi.L.Rev. 338 (1976). However, both of those articles embrace an erroneous view of the 1914 legislative history and deal only summarily or not at all with the subsequent amendments to Section 5(a).

**8.** Another recent law review article, after a careful analysis of the amendments to Section 5(a), has concluded that it precludes the result sought by plaintiff. Note, *Section 5(a) of the Clayton Act and Offensive Collateral Estoppel in Antitrust Damage Actions*, 85 Yale L.J. 541 (1976). Moreover, earlier law review articles assumed that even though there was no constitutional impediment to giving enforcement judgments conclusive effect, this could not be done without congressional authorization. Note, *Government Antitrust Judgments as Evidence in Private Actions*, 65 Harv.L.Rev. 1400, 1407 (1952); Note, *Clayton Act Section 5: Aid to Treble Damage Suitors*, 61 Yale L.J. 417, 425 (1952).

*supra.* However, estoppel as used there only determines what matters have been established *prima facie* by the government judgment. In discussing this aspect of Section 5(a), the Supreme Court has held that it only entitles a civil plaintiff "to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534.[9] Because of this statutory estoppel language appellants do not dispute the matters for which the prior government criminal judgment may be given *prima facie* evidentiary effect. They only assert that such matters may not be given conclusive effect, and for the foregoing reasons we agree.

The orders appealed from are reversed.

---

**9.** See also *Harrison v. Paramount Pictures, Inc.,* 115 F.Supp. 312 (E.D.Pa.1953), affirmed, 211 F.2d 405 (3d Cir. 1954); *Richfield Oil Corp. v. Karseal Corp.,* 271 F.2d 709 (9th Cir. 1959); *Eagle Lion v. Loew's Inc.,* 248 F.2d 438 (2 Cir. 1957), affirmed *per curiam,* 358 U.S. 100, 79 S.Ct. 218, 3 L.Ed.2d 147; *State of Michigan v. Morton Salt Co.,* 259 F.Supp. 35, 64–65 (D.Minn.1966); *Ida Amusement Corp. v. RKO Pictures Corp.,* 1954 Trade Cases ¶ 67,837 at p. 69,709 (S.D.N.Y.1954).